Franklin E. SKEPTON

v.

**COUNTY OF BUCKS, PENNSYLVANIA,**
**Andrew L. Warren and Carl F. Fonash,**
**in their official capacities as Commis-**
**sioners of Bucks County, Elaine P. Zet-**
**tick, Peter A. Naccarato, P.E., O'Don-**
**nell and Naccarato, Inc., McClymont**
**Associates, Vaughn Organization.**

**Civ. A. No. 84–4395.**

United States District Court,
E.D. Pennsylvania.

July 18, 1985.

Harris F. Goldich, King of Prussia, Pa., for plaintiff.

Paul C. Madden, Philadelphia, Pa., for defendants County of Bucks, Pa., Andrew L. Warren, Carl F. Fonash and Elaine P. Zettick.

Richard D. Adamson, Morrisville, Pa., for defendants Peter A. Naccarato, P.E., and O'Donnell and Naccarato, Inc.

## OPINION

LUONGO, Chief Judge.

This case exemplifies how an imaginative lawyer can transform a routine contract suit into a "federal case" in the historic sense of that term. At root is a general contractor's midstream termination by a County and its agents. The legal claims include a treble damage action under the antitrust laws, a suit for deprivation of constitutional rights (including the right of free speech) under color of state law, and an "implied" cause of action under the Fourteenth Amendment. Now before me are defendants' motion to dismiss the complaint and defendants' motion for sanctions under Fed.R.Civ.P. 11. For the reasons that follow, I will grant defendants' motion to dismiss. I will allow plaintiff to amend his claim under § 1983 and the First Amendment if, within the strictures of Rule 11, plaintiff can make specific allegations as to how his free speech rights were violated. Finally, I will deny defendants' motion for sanctions at this time.

### I.

The precise nature of plaintiff's legal claims is not clear. I will therefore begin with an analysis of his complaint, and later seek to relate his allegations to recognized causes of action.

Plaintiff is a general contractor who was awarded a contract to act as general contractor for Bucks County's new correctional facility. The defendants include: Bucks County; Andrew L. Warren and Carl F. Fonash, who are or were Commissioners of Bucks County; Elaine P. Zettick, Chairman of the Bucks County Commissioners; O'Donnell & Naccarato, a structural engineering firm, and Peter A. Naccarato, its agent; McClymont Associates Inc., a soils engineering firm; and Vaughn Organization, an architect.[1]

As part of the contract, Bucks County required the "Contract Sum"—presumably the bid—to include an allowance of $60,000.00 for "purchase of testing and inspection services for soils, concrete, masonry and paving." According to plaintiff's own allegations, the contract also stated that the Contractor "will not be required to employ persons against whom the Contractor makes a reasonable objection."

Plaintiff alleges that at a preconstruction meeting in March, 1983, Peter Naccarato, acting as Construction Manager, directed plaintiff to employ McClymont as soils engineer. Again according to plaintiff's own allegations, it is admitted that plaintiff made no objection to McClymont, and commenced work. Plaintiff states that he had no knowledge of McClymont's qualifications when work began.

When plaintiff began operation he claims that he encountered topsoil of far greater depths than McClymont's report had disclosed. The contract required plaintiff to strip the site of topsoil which McClymont had measured at a depth of four inches, whereas plaintiff found topsoil from twelve to fourteen inches deep.

Plaintiff alleges that, upon discovering said discrepancies, he raised an immediate objection to further use of McClymont with the Commissioners, Vaughn, and Mr. Naccarato. Plaintiff alleges that defendants' refusal to permit him to replace McClymont violated the contract.

---

1. Plaintiff has voluntarily dismissed the complaint against Vaughn.

Thereafter, plaintiff alleges, he asked the Commissioners to employ a second soils testing agency to verify McClymont's projections, that upon their refusal he did so at his own expense, and that his expert returned a report of topsoil from twelve to twenty-four inches. Plaintiff communicated this to the Commissioners, Naccarato, and Vaughn at a Commissioners' meeting on April 18, 1983. There he objected to further use of McClymont and advised that construction of the prison without complete removal of the topsoil would be unsafe. The Commissioners and Naccarato, however, instructed plaintiff to "proceed with construction as specified and with the use of McClymont on the Project." Skepton indicated that he would accede to the instruction, but that he would advise proper elected officials and the citizens of Bucks County that the construction specifications would result in dangerous and defective conditions.

On April 24, 1983, plaintiff alleges that the Commissioners, Naccarato & O'Donnell, Vaughn, McClymont, "and possibly others" held a closed meeting at which Naccarato, Vaughn, and McClymont recommended that plaintiff be terminated and that the Commissioners decided to do so. It is alleged that the closed meeting violated Pennsylvania's open meeting and "sunshine" laws. On April 25, 1983, the Commissioners ordered Skepton to terminate work on the prison.

In Counts I and II of the complaint, plaintiff seeks relief under the "antitrust laws." In Count I, plaintiff alleges that his termination was caused by an unlawful conspiracy among the defendants to deny him the economic freedom to choose his own soils engineer. In Count II, plaintiff specifies the nature of the alleged antitrust violation as a tying arrangement. Plaintiff also alleges that he was terminated in retaliation for his objection to McClymont's report and for the purpose of preventing plaintiff from securing McClymont's termination. Plaintiff alleges that defendants so acted for "their own interest and economic benefit."

Count III seeks redress for alleged violations of plaintiff's free speech rights. Plaintiff alleges that his threatened disclosure of the erroneous soils report was protected speech, that he was terminated as a retaliatory measure when he announced his intention to make disclosure, that the Commissioners acted under color of state law, and that the other defendants acted in conspiracy with them. In addition to actual damages, plaintiff seeks counsel fees and punitive damages. The actual damage claim of $1.5 million apparently refers back to Count I (¶ 32) where plaintiff claims damage to his reputation and goodwill.

Count IV asserts a second civil rights claim—deprivation of his property interest (in the contract) without due process of law. Plaintiff asserts that his due process rights were denied because defendants failed to abide by the terms of the contract and because the meeting at which the decision to terminate him was made occurred in violation of Pennsylvania's open meeting and sunshine laws. Punitive damages and attorney fees are sought under Count IV.

Finally, Count V asserts an implied cause of action for "direct" violation of plaintiff's rights under the Fourteenth Amendment.

## II.

■ In response to plaintiff's undeniably vague antitrust allegations, the defendants have launched a variety of preliminary challenges. The first, pressed heavily in defendants' initial brief, but much less so in their reply memorandum, is that plaintiff has not sufficiently pled subject-matter jurisdiction, to wit: the interstate commerce element.

A review of plaintiff's complaint reveals a bare bones series of interstate commerce allegations. Plaintiff alleges that defendants' illegal conduct had a substantial and adverse impact on interstate commerce by denying to Skepton, its employees and subcontractors the economic benefit which would have flowed from performance of the contract, by denying to out-of-state engineers the right to work on the project, and by denying Skepton the ability to

transact business in Bucks County. Additionally, in response to defendants' motion to dismiss, plaintiff submitted an affidavit which states that financing for the project was obtained through an interstate sale of tax-free bonds, that many of plaintiff's subcontractors were from out-of-state, and that much of the supplies used to build the prison came through interstate commerce.

In view of the substantive defects in plaintiff's complaint and the fact that amendment would certainly enable plaintiff to establish a jurisdictional basis, I will decline to dismiss this case for lack of subject matter jurisdiction. Although defendants rightly criticize the skeletal jurisdictional allegations in the complaint, our court of appeals has recently emphasized that minimal assertions of the impact of antitrust violations on interstate commerce will suffice. *Cardio-Medical Associates, Ltd. v. Crozier-Chester Medical Center*, 721 F.2d 68 (3d Cir.1983).

On the merits, defendants' position is that plaintiff has failed to plead the elements of an antitrust cause of action. Plaintiff's antitrust allegations are contained in Counts I and II of the complaint. Although Count I characterizes defendants' "conspiracy" to terminate him as a restraint of trade in violation of Sherman Act § 1, it remains unclear what type of restraint Count I alleges. Count II claims that defendants' agreement constituted both an unlawful restraint of trade and an unlawful tying arrangement under § 3 of the Clayton Act.

Possibly because of the vagueness of plaintiff's antitrust allegations, defendants, primarily in their initial brief, attacked the tying and "conspiracy" claims as separate antitrust offenses. I do not believe that plaintiff has asserted any "antitrust conspiracy" claim separate from his tying claim.[2] Rather, plaintiff's Reply Memorandum of Law provides a concise description: "The substance of Plaintiff's antitrust claims is that the Defendants imposed on

him a tying arrangement or reciprocal dealing arrangement of the traditional kind."

With plaintiff's claims so defined, defendants' attacks boil down to the following arguments:

1. Plaintiff's claims under § 3 of the Clayton Act must be dismissed because the alleged tie does not involve goods or wares.

2. Plaintiff has not pleaded antitrust injury or damages for which the antitrust laws provide a remedy.

3. There is no tying arrangement here because there is neither a tying nor tied product.

4. There is no tying arrangement because the services of the soils engineer cannot be considered a separate product from the integrated construction project.

5. The complaint fails to allege *market* power in the tying product.

6. The services of the soils engineer were not tied to the construction contract because plaintiff had the opportunity to object to McClymont, but failed to do so.

7. There can be no tying arrangement since the seller has no economic interest in the seller of the tied product.

8. The complaint fails to allege a reciprocity arrangement since plaintiff did not acquire anything from the County (other than payment) in exchange for its services.

9. The County, Warren, Fonash, and Zettick are immune from liability under the Local Government Antitrust Act of 1984.

■ To resolve defendants' motion to dismiss the antitrust claims, I need not explore the intricacies of all of the arguments advanced by the defendants. I am persuaded that one basic defect pervades the complaint: Whether couched in terms of traditional "tying" analysis or refined according to the mold of a reciprocal dealing claim, plaintiff's complaint reveals on its face that plaintiff held, but failed to exercise, the power to avoid McClymont's employment as the soils testing engineer. Plaintiff cannot, therefore, establish an un-

**2.** Plaintiff confirmed this view at oral argument. At issue in this lawsuit is simply whether defendants engaged in an unlawful tying or reciprocity agreement.

lawful linkage between his own employment as general contractor and McClymont's employment as a subcontractor. Although some uncertainty exists as to the level of coercion or "forcing" necessary to show that the sale of one product or service was unlawfully conditioned upon the purchase or sale of another, it remains the plaintiff's burden to establish that such conditioning existed. *See Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). Plaintiff's own complaint establishes that no such conditioning can be proved.

■ Beyond the absence of a tie between plaintiff's and McClymont's contracts, however, the complaint is subject to partial or complete dismissal on several other grounds. Primarily, defendants are correct in their argument that plaintiff may not seek relief under § 3 of the Clayton Act because that statute proscribes tying only in sales of "goods, wares, merchandise, machinery, supplies, or other commodities...." 15 U.S.C. § 14.

■ Defendants are similarly correct in arguing that plaintiff has not pleaded the elements of a tying violation. *Cf. Bogosian v. Gulf Oil Corporation*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). No party sold goods or services only on the condition that the buyer purchase other goods or services. Plaintiff *sold his services* to the County. To *plaintiff's sale* was appended the allegedly coerced sale of McClymont's services to plaintiff and, ultimately, the County. Thus, there was no tying product sold by the County to plaintiff. Likewise, there was no tied product since it was not the County, but McClymont, that sold soils engineering services.

■ Apparently recognizing the infirmities of his tying claim, plaintiff's memoranda of law have recast the antitrust claim as one for reciprocal dealing. Reciprocal dealing was recognized as an antitrust violation by the Supreme Court in *Federal Trade Commission v. Consolidated Foods Corp.*, 380 U.S. 592, 594, 85 S.Ct. 1220, 1221–22, 14 L.Ed.2d 95 (1965) (" '[R]eciprocity' ... is one of the congeries of anticompetitive practices at which the antitrust laws are aimed.") The Court of Appeals for the Ninth Circuit has defined reciprocal dealing as "a dealing in which two parties face each other as both buyer and seller and one party agrees to buy the other party's goods on condition that the second party buys other goods from it." *Betaseed, Inc. v. U and I Incorporated*, 681 F.2d 1203, 1216 (9th Cir.1982). With the exception that reciprocal dealing does not require the seller of the dominant product to act as seller in both markets, tying and reciprocal dealing are similar phenomena, and are judged according to the same legal standards. *Betaseed, Inc.*, 681 F.2d at 1216–17; *Spartan Grain & Mill Company v. Ayers*, 581 F.2d 419, 425 (5th Cir.1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979).

■ Plaintiff's reformulation of his antitrust claim as one for reciprocal dealing, however, does not enable him to avoid dismissal of Counts I and II. Like the tying claim, the reciprocity claim fails because plaintiff, by the allegations in his own complaint, cannot establish that his contract with Bucks County was conditioned upon his acceptance of McClymont as soils testing engineer. Moreover, as defendants point out, both the tying and the reciprocal dealing claims are subject to dismissal because the perpetrators of the alleged tie or reciprocity agreement—the County and the Commissioners—did not have an economic interest in the seller of the tied service, here McClymont. *See Venzie Corporation v. United States Mineral Products Company, Inc.*, 521 F.2d 1309, 1317 (3d Cir. 1975); ABA Antitrust Section, *Antitrust Law Developments*, 75 (2d ed. 1984).

As noted at the outset, defendants raise a host of challenges to plaintiff's claim under the antitrust laws. While I find considerable merit in several of these arguments, I deem it inappropriate, in light of the conclusions stated in the foregoing discussion, to resolve these contentions in the

absence of a specific need to reach those issues. Nevertheless, in accord with the views I expressed during oral argument in this case, I will add that I agree with defendants' basic contention that the transaction here in issue did not violate the antitrust laws' proscription of tying agreements or reciprocal dealing. The essence of the economic transaction alleged by plaintiff was that the County purchased the services of McClymont through a contract to which plaintiff was a party. It is undisputed that the County could have employed McClymont separately, and afforded plaintiff no power to object to the County's choice of a soils engineer. That the County chose to employ McClymont through its agreement with the contractor to whom it gave the right to object should make no difference. The antitrust laws forbid a seller with market power from using that power to restrain competition in a second market; they do not provide contractors the power to veto an owner's choice of subcontractors. In a similar vein, the damages plaintiff alleges he sustained through the County's refusal to discharge McClymont are not injuries fairly attributable to a violation of the antitrust laws. This is not a case in which injury was caused by a seller's use of market power in one market to restrain competition in another. At most, defendants' refusal to terminate McClymont constituted a breach of contract for which plaintiff may seek relief in state court.

Apart from the substantive deficiencies of the antitrust claims, defendants Bucks County, Commissioners Warren and Fonash, and Chairman Zettick claim in the alternative the immunity conferred by the Local Government Antitrust Act of 1984, 98 Stat. 2750–51. In relevant portion, § 3 of the Act provides that "No damages, interest on damages, costs, or attorney's fees may be recovered under § 4, 4A, or 4C of the Clayton Act ... from any local government, or official or employee thereof acting in an official capacity." § 3(a), to be codified at 15 U.S.C. § 35.

■ Because this suit was filed eleven days before the Act became effective, I must decide whether the Act should be applied retroactively. Retroactive application is governed by § 3(b) of the Act. Section 3(b) states:

(b) Subsection (a) shall not apply to cases commenced before the effective date of this Act *unless the defendant establishes and the court determines, in light of all the circumstances, including the stage of litigation and the availability of alternative relief under the Clayton Act, that it would be inequitable not to apply this subsection to a pending case.* In consideration of this section, existence of a jury verdict, district court judgment, or any stage of litigation subsequent thereto, shall be deemed to be prima facie evidence that subsection (a) shall not apply. (Emphasis added.)

The joint statement of the Conference Committee provides some guidance on retroactive application:

The application to pending cases of the money damage protection afforded by section 3 will be based upon a case-by-case determination by the district court. The local government has the burden of proof to establish to the court's satisfaction that it would be inequitable not to apply this act to the pending case. The court is to consider all relevant circumstances. The statute mentions two of the factors that the court should consider—stage of the litigation and the availability of alternative relief under the Clayton Act. Where a pending case is in an early stage of litigation and where injunctive relief can remedy the problem, the defendant local government may be able more easily to sustain its burden. Where a case is in more advanced stages of litigation or where injunctive relief is unavailable or incomplete, the burden would become more difficult. If a case has progressed to or beyond a jury verdict or district court judgment, a local government defendant would need compelling equities on its side to justify the

application of this section to the pending case.

House Conference Report No. 98–1158, 3–4, 98th Cong. 2d Sess., *reprinted in* 1984 *U.S.Code Cong. & Ad.News* 4626, 4627.

I conclude that the instant case is an appropriate occasion for retroactive application of the Act. This litigation is in its infancy, and it was filed a mere eleven days before the Local Government Antitrust Act took effect. Plaintiff has alternative, and more appropriate, remedies in a state court contract action. Finally, as discussed above, plaintiff's substantive claims are without merit under the antitrust laws. In the alternative, therefore, I hold that the Local Government Antitrust Act of 1984 applies in this case, and that it bars the claims against Bucks County, Warren, Fonash, and Zettick.

### III.

Count III of the Complaint charges that defendants violated plaintiff's First Amendment rights because, he alleges, his termination occurred in retaliation for his announced intention to advise "government officials and the citizens of Bucks County that the construction was contrary to all established standards of the industry, the applicable building codes and the contract specifications." Asserting a cause of action under 42 U.S.C. § 1983, plaintiff claims that the defendants acted in concert and under color of state law to deprive him of his constitutional right of free speech.

In their motion to dismiss, defendants attack both plaintiff's claim of constitutional violation and plaintiff's cause of action under § 1983. Plaintiff's First Amendment rights were not violated, defendants argue, because as a contractor doing business with governmental entities, plaintiff was circumscribed in his right of free speech to the extent legitimate governmental interests were impaired by such speech. Defendants note that plaintiff is not a citizen of Bucks County, and predict that recognition of a cause of action on his part would enable every disgruntled contractor to transform routine contract disputes into constitutional litigation. Assuming the plaintiff's speech was protected, defendants contend that termination in *anticipation* of his exercise of the right to speak was not a violation of plaintiff's free speech rights.

Plaintiff's cause of action under § 1983 fails for several reasons according to the defendants. First, several defendants are not state actors. Second, plaintiff's allegations of conspiracy are conclusory. And third, defendants argue that the civil rights statute may not be used to vindicate plaintiff's property interest in the construction contract.

■ After careful consideration of the sufficiency of plaintiff's allegations, I conclude that plaintiff's First Amendment claim must be dismissed for lack of specificity. It has long been the rule in this circuit that suits filed under 42 U.S.C. § 1983 must allege specifically how the plaintiff's civil rights were violated by the defendant's conduct. *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976). The specificity requirement finds particular justification in cases such as this, where plaintiff's constitutional claim stands as a slender basis for federal jurisdiction in an otherwise routine state court contract action.

Because I am dismissing the complaint for lack of specificity, however, I will afford plaintiff the opportunity to amend his pleading to allege specifically the factual basis for his contention that he was terminated because he made public his dispute with Bucks County. Nevertheless, as I did at oral argument of this matter, I remind plaintiff's counsel of his duties under Fed. R.Civ.P. 11. Despite the multiple defects in plaintiff's antitrust and due process claims, I have withheld Rule 11's sanctions out of a desire not to discourage the filing of novel, but unsuccessful, claims. I cannot afford plaintiff or his counsel such latitude if an amended complaint asserts without a sufficient basis that plaintiff was

terminated because of his exercise of First Amendment rights.[3]

I am not persuaded by defendants' arguments that the First Amendment claim should be dismissed without leave to amend. As the record now stands, I cannot determine that plaintiff's unspecified public statements about his dispute with Bucks County were unprotected speech. Nor am I convinced that the First Amendment provided no protection if, as defendants suggest, plaintiff had merely threatened to publicize his dispute when he was terminated. Defendants' challenges to plaintiff's cause of action under § 1983 also do not provide a basis for dismissal without leave to amend. Although defendants correctly point out that some of the named defendants are not state actors, § 1983 imposes liability upon private parties who conspire with state actors to deprive an individual of constitutional rights. *Tower v. Glover*, — U.S. ——, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). Defendants' contention that this is an action to vindicate plaintiff's contractual rights, not constitutional rights, will have to await further clarification from plaintiff as to the basis for his constitutional claim.

## IV.

■ Count IV of the Complaint seeks damages for violation of plaintiff's due process rights. Plaintiff claims that defendants deprived him of his interest in the construction contract without due process by violating and unjustifiably cancelling the contract at a closed meeting in violation of 65 P.S. § 251 and 65 P.S. § 261.

Although the Complaint fails to make clear the basis for the due process claim, the memoranda of law show that plaintiff has not attempted to state a cause of action simply on the ground that defendants deprived him of property under color of state law. Even had plaintiff made such a claim, it would be subject to the objection that due process can (and is) being afforded plaintiff by post-deprivation state remedies—a suit for breach of contract. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Davidson v. O'Lone*, 752 F.2d 817 (3d Cir.1984) (*in banc*), cert. granted sub nom *Davidson v. Cannon*, — U.S. ——, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985).

Plaintiff therefore rests his due process claim on his assertion that defendants violated Pennsylvania's open meeting and "sunshine" laws, 65 P.S. §§ 251, 261. In making this argument, plaintiff apparently contends that state law affords him a right to a predeprivation hearing, and he asserts that his rights were violated because he was not able to enlist the support of news reporters and the general public at the meeting at which defendants agreed to discharge him. In response, defendants' motion to dismiss contends that the public meeting laws confer no right to be heard upon plaintiff or any individual, and that the only purpose of requiring open meetings was to assure public accountability of governmental decisionmakers.

Defendants' arguments as to the proper construction of the sunshine laws are persuasive. As the Pennsylvania Supreme Court has noted, "the object of the Sunshine Law [§ 261], enacted in 1974 at a time of wide-spread public dismay over the Watergate disclosures of extensive secret corruption and abuse of power at the highest levels of the federal government, was to open the decision-making processes of Pennsylvania government to greater *public* scrutiny and accountability." *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675, 682–83 (1977) (emphasis added). A previously-enacted open meeting law, 65 P.S. § 251, confers no greater individual right to a hearing than § 261. Plaintiff has failed to cite, and I have not found, precedent in favor of construing the public meeting laws to create a right to a pretermination hearing for individual contractors. I will therefore

---

**3.** To assist counsel in fulfilling his responsibilities under Rule 11, I ruled at oral argument that plaintiff may conduct discovery until September 3, 1985 on the limited issues raised by plaintiff's First Amendment claim.

grant defendants' motion to dismiss the due process claim.

### V.

In Count V, plaintiff seeks recognition of a direct cause of action under the Fourteenth Amendment. In this case, recognition of such a claim would be "a redundant and wasteful use of judicial resources." *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Section 1983 provides plaintiff a remedy for all violations that could be redressed in a direct action.

### VI.

Defendants have moved for sanctions against plaintiff and his counsel under Fed.R.Civ.P. 11. In support of their motion, defendants recite the extensive history of litigation between these parties in state court, assert that this case was filed for improper purposes, and contend that plaintiff's counsel should have realized the lack of merit of his federal claims after reasonable inquiry. Plaintiff responds that his claims were advanced under a plausible reading of relevant case law.

This is a close case. As the Court of Appeals for the Second Circuit has noted, the revised Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985). My primary concern in this case is with the lack of merit in plaintiff's antitrust and due process claims. After much deliberation, I conclude that this is not an appropriate case for imposition of Rule 11 sanctions. Although I have found plaintiff's antitrust claims to be without merit, I conclude that plaintiff's complaint was an attempt, albeit unsuccessful, to create a novel cause of action. I am satisfied also that plaintiff's due process claim was an objectively reasonable effort to challenge what plaintiff views as arbitrary treatment at the hands of a governmental entity. I am not persuaded that this lawsuit was brought for an improper purpose. Although I note with concern plaintiff's history of litigation against these defendants in state court, I recognize that vindication of certain claims requires a federal forum. I note too that plaintiff is represented in this court by counsel other than the attorneys who represent him in state court. In sum, I find that plaintiff's counsel has reached but not transgressed the perimeters of reasonable conduct in his performance thus far. Barring assertion of an unsupported First Amendment claim in any amended pleading, I will deny defendants' motion for sanctions.