**GREENE COUNTY MEMORIAL PARK, a corporation, Greene County Monument and Vault Company, a corporation, Plaintiffs,**

v.

**BEHM FUNERAL HOMES, INC., a corporation, Frank J. Behm, an individual, Frank C. "Chuck" Behm, an individual, Peggy Behm, an individual, Gregory Rohanna, an individual, Gordon Greenlee, an individual, Barrett Greenlee, an individual, Paul M. Lesako, an individual, Samuel A. Milliken, an individual, and Darryl Throckmorten, an individual, Defendants.**

Civ. A. No. 88–245.

United States District Court, W.D. Pennsylvania.

July 7, 1992.

Louis H. Tarasi, Jr., Joseph J. Hinchliffe, Tarasi & Johnson, P.C., Pittsburgh, Pa., for plaintiff.

C. Robert McCall, Karlowitz, Hoffman & Kane, Pittsburgh, Pa., for defendants Behm Funeral Home, Frank Behm, Peggy Behm and Gregory Rohanna.

William F. Ward, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendants Milliken & Throckmorten.

William K. Herrington, Pittsburgh, Pa., for defendant Lesako.

Arthur H. Wilson, Washington, Pa., for defendants Gordon and Barrett Greenlee.

## OPINION

COHILL, Chief Judge.

This case involves allegations of unlawful tying arrangements and boycotts under the Sherman and Clayton Anti-trust Acts, 15 U.S.C. sections 1 and 14 respectively, and tortious interference with contractual relations under Pennsylvania law. Before this Court are cross motions for summary judgement filed by the plaintiffs and jointly by all the defendants; a separate Motion for Summary Judgment was also filed by Peggy Behm.

For the following reasons, we will deny the plaintiffs' summary judgment motion, and grant the defendants' summary judgment motion. We will also grant defendant Peggy Behm's separate motion for summary judgment. All motions not addressed by this Opinion are moot.

## I. FACTS

The plaintiffs in this action are Greene County Memorial Park (the "Park"), a Pennsylvania corporation which owns and operates a cemetery in Greene County, Pennsylvania, and Greene County Monument and Vault Company (the "Vault Company"), a Pennsylvania corporation engaged in the business of selling burial vaults and grave markers. The Park and Vault Company were, at all times relevant to this opinion, owned and operated by Jeanne and Challen Waychoff.

Defendant Behm Funeral Home, Inc. is owned and operated by defendants Frank J. Behm, Frank C. Behm and Gregory Rohanna—all funeral directors licensed by the Commonwealth of Pennsylvania. Defendant Peggy Behm is an employee of, and stockholder in, Behm Funeral Home and is married to Frank J. Behm. Defendants Gordon and Barrett Greenlee are licensed

funeral directors who own and operate Greenlee Funeral Homes, a partnership. Defendants Samuel Milliken and Daryl Throckmorton are licensed funeral directors who own and operate Milliken & Throckmorton Funeral Home, also a partnership. Defendant Paul Lesako is a licensed funeral director and does business as Paul M. Lesako Funeral Homes. The defendants' businesses are all located in Greene County, in the Western District of Pennsylvania. For the purposes of this Opinion, we will refer to Frank J. Behm, Frank C. Behm, Gregory Rohanna, Samuel Milliken, Daryl Throckmorton, Paul Lesako, and the Greenlees collectively as the "Funeral Directors."

The Park has sold burial plots and grave markers since 1930. C. Waychoff deposition at 23–24, 449. In 1984 it began selling burial vaults and mausoleum crypts as well. *Id.* at 13; Plaintiff's Response to Behm's First Set of Interrogatories No. 9. In October, 1986, the Park began selling a product which served as both a casket and a vault called "Chapel Vault," and in October, 1987, the Park began selling caskets. Plaintiff's Response to Behm's First Set of Interrogatories Nos. 1, 6, 9.

The Vault Company was incorporated in October, 1984 to sell monuments and to purchase vaults for resale to the Park. *Id.;* C. Waychoff Dep. at 437, 440. The Vault Company eventually stopped selling vaults to the Park when the Park began to buy directly from vault manufacturers. J. Waychoff Dep. at 17–18, 20–21.

In addition to providing funeral services, the Funeral Directors also sell caskets, vaults and monuments. They belong to several professional organizations including the Pennsylvania Funeral Directors Association ("PFDA") and the Green County Funeral Directors Association ("GCFDA"). It was during meetings of these organizations that the plaintiffs claim the defendants conspired to adopt the various illegal, anti-competitive practices and policies listed below in an effort to eliminate the Park as a competitor in the sale of caskets and burial vaults. These actions, the plaintiffs allege, are in violation of the Sherman and Clayton antitrust laws.

### 1. Advertisements

During two meetings of the GCFDA in 1986 and 1987, several members, including the Funeral Directors, agreed to publish certain advertisements in local newspapers. One, which was published by defendants Samuel Milliken, Daryl Throckmorton, Frank J. Behm, Frank C. Behm and Gregory Rohanna, was entitled "Care Concern and Compassion." Although the content of these advertisements varied slightly, they all warned consumers of "out-of-town salespersons" selling vaults and caskets. According to Frank J. Behm, the advertisements were directed at Tri–County Funeral Association, a company from Allegheny County, Pennsylvania, which sold vaults and caskets by door-to-door salesmen in Allegheny, Greene, Washington and Fayette counties. F.J. Behm Dep. at 74, 75, 79–83; *see also* G. Greenlee Dep. at 28, 29. The advertisements placed by Frank J. Behm, Frank C. Behm and Gregory Rohanna included the following statement:

> Before you open your phone line or your door to one of these salespeople, call your local funeral director for background information. If you choose to speak with a salesperson, we urge you to use caution. They are only offering to sell you a casket and a vault for future use. This package does not include your funeral services. They may use a "special savings certificate" as an enticement. We urge you to contact your funeral director and Social Security office to discuss this certificate. The salesperson will probably tell you that the casket and the vault that they are selling today will gladly be accepted by any funeral director in the future. This is not so! They will finally tell you that they can save you thousands of dollars when you deal through them. This is absolutely untrue!

Exhibit 1 to F.J. Behm Dep; Exhibit 24 to Defendants' Motion for Summary Judgment.

Other advertisements sponsored by the Funeral Directors and the GCFDA warned

consumers to consult funeral directors before making purchases from salespeople. *See,* e.g. Exhibit 19 to Defendants' Summary Judgment Motion.

Challen Waychoff testified at his deposition that none of these advertisements contained false statements of fact, disparaged the plaintiffs or their products, or caused any of the plaintiffs' customers to cancel contracts. C. Waychoff Dep. at 509.

### 2. Statements to Plaintiffs

The plaintiffs also allege that the defendants made various statements to them which evidence the defendants' conspiracy to drive the Park out of business. They allege that defendant Gordon Greenlee stated to Challen Waychoff in February, 1984, that the funeral directors had always fought among each other and now that Challen Waychoff was competing against them by selling caskets, they were going to have to get together to see what they could do about the Waychoffs. C. Waychoff Dep. at 264. Then, in July, 1986, defendant Paul Lesako told Jeanne Waychoff that he was going to stop purchasing vaults from the Park because he heard at a meeting of the GCFDA that Park was selling caskets. C. Waychoff Dep. at 266; Complaint ¶¶ 17-22.

### 3. Casket Handling Fees and Price Fixing

It is undisputed that some of the funeral directors impose on customers who purchase caskets from others so called "casket handling fees." The plaintiffs contend that these casket handling fees are designed to thwart competition and allow the defendants to recover profits lost when customers purchase caskets elsewhere. Plaintiffs' Brief in Support of Summary Judgment at 5. The plaintiffs claim that the defendants practice of charging a casket handling fee constitutes an illegal tying arrangement, intended to drive third party casket sellers out of business.

The defendants contend that casket handling fees are designed to recover the costs which funeral directors incur when handling caskets purchased from third party vendors and are condoned by the Federal Trade Commission. *See,* FTC Opinion letter dated 3/10/88, Exhibit 21 to Defendant's Motion for Summary Judgment. In addition the Park imposed its own casket handling fees when customers purchased caskets and vaults from others. Defendants' Brief in Support of Summary Judgment at 12, 13.

The plaintiffs respond that the FTC allows only reasonable casket handling fees, and that it is clear from the FTC letter to which the defendants refer that any action taken to discourage or halt third party sales of caskets is a violation of FTC regulations. Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment at 25.

The plaintiffs also allege that at meetings of the GCFDA and the PFDA the defendants exchanged pricing information in furtherance of a conspiracy to fix prices for funeral services and products. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 16-19. In support of this contention, the plaintiffs offer evidence that the PFDA circulated an anonymous pricing survey among its members in 1989 (to which only one of the defendants responded), and evidence that Frank J. Behm gave talks at PFDA meetings concerning "proper pricing" of funeral services to recover costs incurred when handling third party caskets. *Id;* Plaintiffs' Brief in Support of Summary Judgment at 15-19; F.J. Behm Dep. Ex. 18.

### 4. Attempts to Hire Away the Park's Employees and Interfere with the Park's Contracts

In furtherance of the defendants' scheme to drive the Park out of business, the plaintiffs allege that defendants Frank J. Behm, Frank C. Behm and Paul Lesako attempted to hire employees away from the Park and interfere with its contracts with customers. Complaint ¶¶ 23, 25. Although the plaintiffs fail to direct the Court to specific evidence in support of these allegations, we found that the Waychoffs testified during oral deposition that an associate of Paul Lesako's named Mr. Martin told a Park employee named Eli Granus that he would starve to death working for Challen Way-

choff and asked him how he made a living. C. Waychoff Dep. at 326. The Waychoffs also testified that Mr. Milliken and Mr. Throckmorton asked another employee of the Park why he would work there. *Id.; J.* Waychoff Dep. at 151. This is the only evidence the Court has discovered relating to the plaintiffs' allegations that as part of their conspiracy to drive the Park out business, the defendants attempted to hire away the Park's employees.

As with their allegations that the defendants attempted to hire away their employees, the plaintiffs fail to direct the Court to evidence in support of their allegations that the defendants interfered with the Park's contractual relations with its customers. Again the Court has identified through its independent review of deposition testimony five instances where the plaintiffs allege that the defendants interfered with the Park's contracts with its customers for the sale of caskets or vaults. *See* C. Waychoff Dep. at 274–75, 326–27; J. Waychoff Dep. at 206. The Waychoffs allege that several customers who planned on purchasing vaults or caskets from the Park changed their minds after talking to the Funeral Directors. The plaintiffs offer no evidence concerning the reasons these customers changed their plans after talking with defendants or what the defendants said to them.

The plaintiffs allege that the defendants' conduct outlined above constitutes a conspiracy to drive the Park and other third party casket sellers out of business by interfering with the Park's current and prospective contractual relations, attempting to hire away its employees, fixing prices, tying the sale of their funeral services to the sale of their caskets and vaults, and by placing group advertisements attacking third party casket sellers. The plaintiffs suggest that these activities are proscribed by section 3 of the Clayton Antitrust Act and section 1 of the Sherman Antitrust Act. 15 U.S.C. §§ 14, 1. After outlining the standard we must apply in evaluating summary judgment motions we will address the merits of the plaintiffs' motion for partial summary judgment and then discuss the defendants' motions.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) states that summary judgment shall be granted forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When confronted with a motion for summary judgment, it is not the court's function to weigh the evidence and determine the truth of the matter, rather, it is the court's job to decide whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party has the burden to identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. As the Supreme Court stated in *Celotex Corp. v. Catrett:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ The United States Supreme Court has cautioned courts to tread carefully when granting summary judgment motions where motive and intent are important issues. In those cases, summary judgment should be granted only in the absence of any significant probative evidence tending to support the complaint. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Against this standard we evaluate the parties' summary judgment motions.

## III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiffs state that they are entitled to partial summary judgment against the Behm Defendants, Paul Lesako, Samuel Milliken and Daryl Throckmorton on their claims under section 1 and 3 of the Sherman and Clayton Acts respectively because these defendants have admitted discussing at meetings of the GCFDA and PFDA third party caskets sales, as well as the possibility of purchasing the Park. Plaintiffs' Brief in Support of Summary Judgment at 10, 11, 14–16. They have also admitted, the plaintiffs argue, such "anti-third party activities" as price fixing and group advertisements criticizing third party casket sellers and intended to drive the plaintiffs out of business. *Id.*

In further support of their summary judgment motion the plaintiffs argue that the defendants' casket handling fees "effectively penalized and coerced customers, boycotted prospective customers by deterring purchases from Plaintiffs and blocked Plaintiffs from access to casket and vault sales." Plaintiffs' Brief in Support of Summary Judgment at 17. The 1989 PFDA pricing survey reveals that over three hundred of its members used a casket handling fee "to recover profits lost to third party

casket and vault sales," and that for most members this fee was more than $250.00. Plaintiff's Brief in Support of Summary Judgment at 17, 18.

The plaintiffs also argue that Frank J. Behm's counsel has admitted in her pretrial statement that her client has violated sections 1 and 3. Plaintiff's Brief in Support of Summary Judgment at 22–23. We find no such admission. Such exaggerations and inaccurate interpretations throughout the plaintiffs' various briefs have forced the Court to scrutinize with unusual care all of the plaintiffs' representations.

In conclusion, plaintiffs argue that they are entitled to summary judgment on their tying claims against the Behm Defendants, Paul Lesako, Samuel Milliken and Daryl Throckmorton because they "admit in their depositions to instituting tied casket and services sales, to establishing a coercive penalty against consumers and to boycotting consumers from casket and vault purchases and Plaintiffs from casket and vault sales through the tying agreements." We do not think so.

■ The evidence shows only that some of the defendant Funeral Directors imposed casket handling fees when customers purchased caskets or vaults from others, and offered package deals whereby customers could receive funeral services, caskets and vaults all for one price. There is no evidence that the Funeral Directors forced customers into purchasing caskets and vaults from them by refusing to provide funeral services otherwise. There is also insufficient evidence that the casket handling fees were designed to deter competition rather than to cover increased costs incurred when handling caskets purchased elsewhere, as permitted by the FTC. We will therefore deny the plaintiffs' summary judgment motion.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants have jointly filed a summary judgment motion which attacks the plaintiffs' claims on several fronts. The moving defendants argue that: (1) the plaintiffs' claims under section 3 of the

Clayton Act are unfounded because that statute does not apply to situations where goods are tied to services; (2) the plaintiff's claims of unlawful tying fail to state a cause of action; (3) the plaintiffs' allegations of concerted efforts in violation of the Sherman Act are unsupported by the evidence, and; (4) if the Court dismisses the plaintiffs' federal claims, it should dismiss the remaining state law claims for lack of jurisdiction. In addition, defendant Peggy Behm has filed a separate summary judgment motion arguing the plaintiffs have failed to present any evidence which suggests that she participated in any of the illegal acts alleged, and therefore the Court should enter summary judgment against the plaintiffs' claims against her. We will address these arguments serially.

### A. Claims Under Section 3 of the Clayton Act

Section 3 of the Clayton Act states in relevant part:

> It shall be unlawful for any person engaged in commerce ... to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities, ... on the condition, agreement, or understanding that the lessee or producer thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, ...

15 U.S.C. § 14

■ Courts have clearly and consistently held that transactions involving the sale of services are outside the scope of section 3 of the Clayton Act. *See, Fleetway, Inc. v. Public Service Interstate Transportation Co.*, 72 F.2d 761 (3d Cir.1934), *cert denied*, 293 U.S. 626, 55 S.Ct. 347, 79 L.Ed. 713 (1935); *Rosebrough Monument Co. v. Memorial Park Cemetery Assn*, 666 F.2d 1130, 1141 (8th Cir.1981), *cert denied*, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982); *Skepton v. Bucks County, Pa.*, 613 F.Supp. 1013, 1018 (E.D.Pa.1985). The plaintiff does not contest the defendants' assertion that section 3 of the Clayton Act does not apply to goods tied with services,

but alleges, in a footnote, that: "embalming fluid is a product. It is sold in the course of embalming services that funeral directors render. Thus judgment on the § 3 claim for plaintiffs is appropriate." Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment at 27, n. 8. This argument is frivolous.

Services are not "goods" simply because they involve the incidental use of a product, such as embalming fluid. We will therefore dismiss plaintiffs' section 3 claims.

### B. Claims Under Section 1 of the Sherman Act

■ Section 1 of the Sherman Act states: Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal....

15 U.S.C. § 1 (Supp.1991).

In order to sustain a cause of action under section 1 of the Sherman Act, the plaintiffs must prove: (1) that the defendants contracted, combined or conspired; (2) that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of that conspiracy.... *Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72, 81–82 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978).

■ The United States Supreme Court has held that concerted refusals to deal are generally per se violations of section 1. Business and economic justifications for such conduct are irrelevant, and a showing of adverse effect on competition is unnecessary. Kintner, *Federal Antitrust Law* § 10.30 at 168; *see generally, United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 210–19, 60 S.Ct. 811, 838–42, 84 L.Ed. 1129 (1940); *Fashion Originators' Guild v. FTC*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Klor's Inc.*

*v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) ("Klor's Inc."); *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.,* 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961) ("Radiant Burners").

■ When the defendants' activities do not constitute per se violations of section 1, the plaintiff must prove, through the rule of reason analysis announced by the Supreme Court in *Standard Oil Co. of N.J. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911), that the defendants' conduct is an unreasonable restraint on trade; a task which involves close examination of the particular facts of each case to determine the motives of the parties, the economic impact of the restriction, and its effect on the relevant market. Kintner, *Federal Antitrust Law* § 10.37.

### 1. Plaintiffs' Tying Claims

■ When an individual holding market power over one product "ties" the sale of that product to another, which in effect forces buyers into purchasing the tied product from one source and thereby restrains competition in the market for the tied product, a violation of section 1 of the Sherman Act has occurred. Certain types of tying arrangements are considered per se violations of section 1 of the Sherman Act under the rule announced by the United States Supreme Court in *International Salt Co. v. United States,* 332 U.S. 392, 396–97, 68 S.Ct. 12, 15, 92 L.Ed. 20 (1947), and refined by later case law. Under the modern rule, a plaintiff attempting to establish a per se violation of section 1 of the Sherman Act when a tying claim is involved must show that: (1) the defendant has tied the sale of two distinct products by conditioning the sale of the tied product to the purchase of the tying product; (2) a substantial amount of commerce is involved, and; (3) the seller has sufficient market power with respect to the tying product to appreciably restrain free competition in the market for the tied product. *See, Waldo v. North American Van Lines, Inc.,* 102 F.R.D. 807, 812 (W.D.Pa.1984); *Waldo v. North American Van Lines,*

*Inc.,* 669 F.Supp. 722, 727 (W.D.Pa.1987); *see also, Ungar v. Dunkin Donuts of America, Inc.,* 531 F.2d 1211, 1223–24 (3d Cir.1976), *cert. denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976).

If a restraint on trade does not fall within the per se rule, a plaintiff may still establish a violation of section 1 of the Sherman Act under the rule of reason approach. "A rule of reason analysis requires the court to focus on 'the percentage of business controlled, the strength of the remaining competition [and] whether the action springs from business requirements or purpose to monopolize.' " *Times–Picayune Publishing Co. v. United States,* 345 U.S. 594, 615, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953).

The plaintiffs allege that the Funeral Directors have "tied" their funeral services to the sale of caskets and vaults and that non-funeral directors selling caskets and vaults in Greene County are adversely affected by the defendants' practice of forcing consumers to "purchase a bundled package or locate a funeral director who sells products and services separately." Brief in Support of Plaintiffs' Summary Judgment Motion p. 5. Such a search will prove futile, the plaintiffs argue, because almost all Greene County and Pennsylvania funeral directors belong to the PFDA, or other local trade associations such as the GCFDA, and have worked to destroy or diminish third party competition. *Id.*

We will address the plaintiffs' contention that the defendants' casket handling fees constitute a per se violation of section 1 of the Sherman Antitrust Act and then discuss the possibility that they violate the Act under the rule of reason analysis.

### a. *Per Se Analysis*

The defendants contend that after extensive discovery the plaintiffs have failed to uncover any evidence of a per se illegal tying arrangement between the sale of funeral services and the sale of vaults and caskets. They argue the plaintiffs have presented no evidence of an express tying agreement between the defendants and their customers, and no evidence that the

defendants' customers were coerced into purchasing vaults and caskets from the defendants. The plaintiffs respond that a per se illegal tying arrangement is evident in this case because "the tying policy is expressly written into the defendants' price lists." Plaintiff's Response to Defendant's Summary Judgment Motion at 26.

Although the plaintiffs allege that the defendants' funeral services were tied to the sale of caskets *and vaults* through the imposition of casket handling fees, they have offered no explanation or evidence that supports their allegations that the defendants also tied the provision of funeral services to the sale of burial vaults. On this basis we will grant summary judgment in favor of the defendants with regard to the plaintiffs' allegations that the defendants tied their funeral services to the sale of burial vaults. With that out of the way, we turn to the plaintiffs' allegation that the undisputed existence of casket handling fees proves the existence of a per se illegal tying arrangement between funeral services and *caskets.*

■ The Court finds that although some of the Funeral Directors listed casket handling fees on their price lists, there is no evidence that they expressly conditioned the provision of funeral services on the purchase of caskets. Nevertheless, the plaintiff's argue that there still exists a genuine issue of material fact as to whether the Funeral Directors use of casket handling fees constitutes a per se illegal tying arrangement.

In order to avoid summary judgment, the plaintiffs must present some evidence that a sufficient number of funeral directors in Greene County, in a concerted effort to eliminate competition from third party casket sellers, imposed casket handling fees to discourage customers from buying caskets elsewhere. If the plaintiffs fail to provide evidence that the defendants established casket handling fees as a *concerted* effort, they could still prevail on their tying claims if they could show that the defendants individually controlled a significant portion of the relevant market. We do not believe they have done either.

The plaintiffs argue that a genuine issue of material fact exists as to whether the defendants imposed casket handling fees as a concerted action. In support of this assertion, the plaintiffs refer the Court to pages ten through seventeen of their Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment. In this section, the plaintiffs attempt to outline the involvement of defendants Frank J. Behm, Frank C. Behm, Gregory Rohanna, Gordon Greenlee, Barrett Greenlee, Paul Lesako and Samuel A. Milliken in the alleged conspiracy by citing excerpts of their deposition transcripts. After referring to the testimony to which the plaintiffs cite, however, we find that the plaintiffs' summary of the defendants' testimony is not accurate. The deposition testimony cited by the plaintiffs reveals only that defendants Frank J. Behm, Frank C. Behm, Gregory Rohanna, Gordon Greenlee, Barrett Greenlee, Paul Lesako and Samuel A. Milliken attended meetings of the GCFDA and PFDA where they discussed: third party casket sales and their impact on the funeral director's business; advertising aimed at recovering sales lost to third party casket and vault salesmen; methods to effectively compete with third party casket sellers, and; the possible purchase of the Park. *See* Exhibits 2–4, 8–10, 13, 16 to Plaintiffs' Motion for Partial Summary Judgment. Evidence that the Funeral Directors were members of various organizations which held meetings where pricing and competitors were discussed, is not sufficient evidence of a "conspiracy to impose casket handling fees aimed at destroying competition" to avoid summary judgment. In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court stated that in such cases:

> [I]f the antitrust defendant's conduct is consistent both with permissible competition and illegal conspiracy, evidence of such conduct 'does not, standing alone, support an inference of antitrust conspiracy.' In such a situation, '[t]o survive a motion for summary judgment ..., a plaintiff seeking damages for a violation

of [section 1 of the Sherman Act] must present evidence that tends to exclude the possibility that the alleged conspirators acted independently.' In other words, such a plaintiff 'must show that the inference of [illegal] conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the plaintiff].

*Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356.

Rather than establishing concerted action to impose casket handling fees, the evidence presented by both sides tends to support the defendants' assertions that they acted independently when deciding whether to impose casket handling fees on their customers and if so, deciding how much to charge. The evidence reveals that the defendants who impose casket handling fees adopted them at different times and charged varying amounts. Defendants Milliken and Throckmorton testified in their depositions that they instituted their casket handling fees in 1984. Milliken Dep. p. 47. Behm Funeral Home adopted casket handling fees prior to 1984, and defendant Lesako did not adopt a casket handling fee until 1987. F.J. Behm Dep. pp. 89–90; Lesako Dep. p. 64. The Greenlees have never used casket handling fees. B. Greenlee Dep. pp. 40, 44. In addition, defendants Rohanna, Milliken and Lesako all testified in their depositions that prior to the initiation of this lawsuit they were unaware of the varied amounts each funeral director charged for casket handling fees. Rohanna Dep. p. 25; Milliken Dep. p. 39; Lesako Dep. p. 22. The plaintiff has offered no other evidence that the defendants adopted and imposed casket handling fees as a concerted action.

■ Because we have determined that there is no evidence of concerted action to impose casket handling fees, the plaintiff must show that each defendant possessed sufficient independent market power under the per se analysis to avoid summary judgment on their tying claims.

The plaintiffs have compiled statistical data in an effort to define the Funeral Directors' market share in Greene County, Pennsylvania. The plaintiffs determined the total number of deaths reported in Greene County and divided that number by the number of funerals handled by the Behm, Lesako and Milliken and Throckmorton funeral homes. *See* Affidavit of Jean Kell. Assuming this method of determining market share is accurate, and we do not believe it is because it is based upon total deaths occurring in Greene County rather than the total number of funerals held in Greene County, the plaintiffs have shown the defendants held the following share of the funeral market in Greene County from 1984 through 1990:

| Funeral Home | Years | Market Share |
|---|---|---|
| Behm Funeral Home | 1984–1990 | 33–43% |
| Lesako Funeral home | 1984–1990 | 14–17% |
| Milliken & Throckmorton | 1984–1990 | 23–28% |

In *Times–Picayune Publishing Company Co. v. United States*, 345 U.S. 594, 611, 73 S.Ct. 872, 881, 97 L.Ed. 1277 (1953), the Supreme Court held that a newspapers' market share of 33–40% was insufficient to establish a per se violation of section 1. *See also, Jefferson Parish Hospital v. Hyde*, 466 U.S. 2, 27, 104 S.Ct. 1551, 1566, 80 L.Ed.2d 2 (1984) (defendant hospital's 30 percent market share was insufficient to establish a per se violation). The plaintiffs' calculations of market share in this case do not demonstrate that any single defendant held sufficient market power to establish their tying claims as per se violations of section 1.

Because the plaintiffs have no evidence that the defendants imposed casket handling fees as a concerted effort, and be-

cause the plaintiffs have failed to offer any other evidence showing that the defendants individually held sufficient market power to sustain a per se tying claim, we will grant summary judgment in favor of the defendants on this issue.

### b. The Rule of Reason Analysis

■ In a recent opinion, the United States Court of Appeals for the Third Circuit announced that a plaintiff attempting to establish tying claims through the rule of reason analysis need not show that the defendants have market power over the tying product. *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468 (3d Cir.1992). Instead, in order to avoid summary judgment, the plaintiffs must present evidence that the defendant is engaged in tying and that as a result, injury to competition, and not just to the plaintiffs, has occurred. *Id.* In other words, the plaintiffs in this case would have to show how the defendants' tying arrangements are producing anti-competitive effects in the market. Because we have ruled that there is no evidence of concerted activity on the part of the defendants to impose a tying arrangement, and because none of the defendants alone possess sufficient market power to presume anti-competitive effects under the per se rule, the plaintiffs must come up with some other theory of injury to the relevant market proximately caused by the independent actions of the defendants in imposing casket handling fees. *Id.* Because the plaintiffs have failed to do so, we will grant summary judgment in favor of the defendants concerning the plaintiffs' tying claims.

### 2. Plaintiffs' Claims of Group Boycott and Other Concerted Activity

In count II of their complaint, the plaintiffs allege:

33. Beginning in 1984 and continuing up to and through the present time, defendants have met, conferred or communicated with the aim or objective of forming an unlawful combination(s) contract(s) or conspiracy(s) and have formed an unlawful combination contract or conspiracy to destroy Greene County Memorial Park as a competitive force in the markets for burial vaults, caskets and monuments in Greene County Memorial Park [sic] for any reason.

34. The aforesaid persuasion or coercion was without business justification and was intended to destroy the efficiency of the relevant markets.

35. The aforesaid combinaben(s) [sic] or conspiracies amounted to an unlawful boycott of the cemetery wherein defendant funeral directors would unlawfully divert customers for cemetery spaces and cemetery services from Green County Memorial Park in retaliation for Greene County Memorial Park's selling funeral merchandise in violation of the anti-trust laws.

Complaint ¶¶ 33–35.

The plaintiffs' various pleadings, briefs and memoranda fail to delineate the exact nature of their claims against the defendants in count II of the complaint. It appears that count II encompasses a wide array of activities which plaintiffs very loosely label a group boycott or other concerted activity in violation of section 1 of the Sherman Act. We will first discuss the extent to which the plaintiffs have established a group boycott under the most common meaning of the term.

### a. Group Boycott and Price Fixing Claims

■ The plaintiffs in paragraph thirty-five of their complaint, characterize the defendants' actions as an unlawful boycott of the Park. Group boycotts, or concerted refusals to deal where a group of individuals or entities agree to stop doing business with another party, are per se violations of Section 1 of the Sherman Act. *See Klor's Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Radiant Burners*, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). A unilateral or independent refusal to deal is not prohibited by section 1. *Matsushita*, 475 U.S. 574, 587, 106 S.Ct. 1348,

1356, 89 L.Ed.2d 538 (1986); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 473 (3d Cir.1985). Thus, in order to survive summary judgment on a true group boycott claim, the plaintiff must point to enough evidence of collusive action among the defendants to "show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the plaintiffs]". *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356.

█ In this case, the plaintiffs have failed to present evidence that the defendants collectively refused to do business with the Park. The defendants, on the other hand, have offered a substantial amount of evidence that they continued to handle funeral services for deceased who were buried in the Park, and provided funeral services for individuals who purchased caskets and vaults from the Park. J. Waychoff Deposition at 21–22, 91–92; C. Waychoff Deposition at 322, 481, 526, 547; Plaintiffs' Response to Milliken and Throckmorton's First Request for Admissions No. 30. Behm Funeral Home purchased vaults from the Park both before and after it began selling caskets. J. Waychoff Deposition at 21–22. Although the defendants admit that Paul Lesako stopped purchasing vaults from the Park after he learned that it was selling caskets, the plaintiffs have failed to show that his decision to stop buying vaults from the Park was anything but an independent, unilateral business decision. Because the plaintiffs have failed to show that the defendants, as a group, refused to do business with the Park, their characterization of the defendants' conduct as a group boycott is an unsupported legal conclusion.

█ The plaintiffs' also claim the defendants, through the GCFDA and the PFDA, "fixed fees and penalties, established higher funeral bills, boycotted plaintiffs and destroyed plaintiffs' business." Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 10. Because we have already dismissed the possibility that this allegation constitutes a viable group boycott claim, we will determine the extent to which it constitutes an allegation that the defendants were party to a price fixing agreement. Price fixing agreements are also per se violations of section 1.

█ The only factual basis the plaintiffs offer in support of their claim that the defendants conspired to fix prices is: the Funeral Directors' admissions that they discussed methods to effectively compete with third party casket sellers; evidence that defendant Frank J. Behm gave presentations at meetings of the PFDA concerning "properly pricing services when a third party sale is made," and; evidence that one of the defendants admitted to participating in a PFDA survey of casket handling fees which was circulated to all of its members. This is not sufficient evidence of a price fixing agreement to establish a violation of section 1.

The dissemination of the PFDA survey concerning its members' pricing policies, and discussions at PFDA meetings concerning proper pricing of funeral services to recover costs incurred when handling third party caskets, without any evidence that the defendants' prices were uniform or that the defendants agreed to fix prices in some other manner, is insufficient evidence of a price fixing agreement to avoid summary judgment. *See United States v. Citizens & Southern National Bank*, 422 U.S. 86, 113, 95 S.Ct. 2099, 2115, 45 L.Ed.2d 41 (1975) (exchange of general pricing information not itself per se violation of section 1). Similarly, evidence that one defendant participated in a PFDA survey of its members' prices is insufficient to raise a genuine issue of material fact as to a price fixing conspiracy among the defendants, even when considered in conjunction with the other evidence the plaintiffs have offered in support of their antitrust claims.

*b. Claims of Other Concerted Activity Imposing an Unreasonable Restraint on Trade*

█ Aside from their group boycott and price fixing claims, the Plaintiffs allege that the defendants, pursuant to a concerted effort to drive the plaintiffs out of busi-

ness, placed group advertisements, interfered with plaintiffs' employees and customers, and penalized customers who purchased caskets from third parties by imposing casket handling fees. Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment at 16–19. This array of activity does not fall into the category of conduct which is so obviously anti-competitive as to warrant ordination as a per se violation of section 1 of the Sherman Act. Thus, the Court must evaluate the viability of the plaintiffs' loosely labeled "boycott" claims under the rule of reason analysis. We will first state the factors involved in the rule of reason analysis, and then determine the extent to which the evidence the plaintiffs have offered supports a section 1 claim.

■■■ In order to recover under a claim arising from section 1 of the Sherman Antitrust Act but which is not a per se violation of that statute, a plaintiff must prove: "(1) that the defendant contracted, combined or conspired among each other; (2) that the combination or conspiracy produced. adverse, anti-competitive effects within the relevant geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy." *Tunis Bros. Co. Inc. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir.1991). "The Sherman Act was designed to prohibit significant restraints on trade rather than to 'proscribe all unseemly business practices.'" *Id.* at 728, *citing, Sitkin Smelting and Ref. Co. v. FMC Corp.,* 575 F.2d 440, 448 (3d Cir. 1978), *cert. denied,* 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978). The plaintiffs must demonstrate some harm to the competitive landscape from the defendants' actions. *Tunis,* 952 F.2d at 728. They must prove that the challenged conduct affected the prices, quantity or quality of goods or services. *Id.*

■■■ In this case, the plaintiffs' allegation that as part of the defendants' concerted effort to destroy third party casket sales in Greene County, the defendants placed the "care concern and compassion" adver-

tisements in local newspapers fails to create a genuine issue of material fact for trial. Although it is undisputed that the defendants acted together to place these advertisements in local papers, we do not believe that this action violates section 1 of the Sherman Antitrust Act. The advertisements merely urged people to beware of out of town casket salespersons and stated that it was untrue that funeral directors would gladly accept caskets purchased from them. The advertisements were expressly directed at out of town salespeople, not local cemeteries. F.J. Behm Dep. at 74, 75, 79–83; *see also* G. Greenlee Dep. at 28, 29. According to Challen Waychoff, none of these advertisements contained false statements of fact, disparaged the plaintiffs or their products, or, to his knowledge, caused any of the plaintiff's customers to cancel contracts. C. Waychoff Dep. at 509. Although these advertisements were arguably misleading, the fact that some or all of the defendants placed these advertisements is not evidence that they produced adverse, anti-competitive effects within the relevant geographic market, or that the plaintiffs were injured as a proximate result of the defendants' actions.

■■■ The plaintiff's allegations that the defendants, as part of their group effort to drive the Park out of business, attempted to hire away two of the Park's employees and interfere with the Park's customers are also unsupported by sufficient evidence to survive summary judgment. These allegations appear to be based entirely on the deposition testimony of the Waychoffs who testified that Samuel Milliken and Daryl Throckmorton asked an employee of the Park why he was working there. J. Waychoff Deposition at 151; C. Waychoff Deposition at 397–98, 476. The Waychoffs also claim that an associate of Paul Lesako's stated to another employee of the Park that he would starve to death working there. C. Waychoff Dep. at 326–27. It is difficult to see how either of these isolated statements evidence an attempt to hire away the Park's employees. Even if these statements can logically be construed as attempts to hire the Park's employees,

there is no evidence that these incidents were part of an underlying conspiracy rather than independent action. Evidence that three of the Funeral Directors made these comments to two of the Park's employees does not support the plaintiffs' section 1 claim.

■■■ The plaintiffs have offered no evidence to support their claims that the defendants attempted to interfere with the Park's customers. The Court's independent review of the deposition testimony on record revealed only allegations by the Waychoffs that on several occasions customers that had intended to purchase casket or vaults from the park changed their minds after speaking with the Funeral Directors. J. Waychoff Deposition at 145–51, 206; C. Waychoff Deposition at 274–75, 334. Again, this evidence is insufficient to establish a violation of section 1 of the Act because the plaintiffs have presented no evidence that these actions were part of a coordinated effort on the part of all the defendants to drive the Park out of business, or that they produced anti-competitive effects in the relevant market. Interference with contractual relations is a state law cause of action, not the basis for an antitrust claim.

■■■ The Greenlees' statement that the funeral directors were going to "do something" about the plaintiffs' caskets sales also fails to save the plaintiffs' section 1 claims from summary judgment. This alleged statement is a vague threat, but there is no evidence that the defendants acted on this threat in a concerted manner which unreasonably restrained trade.

In summary, the plaintiffs have failed to come forward with sufficient evidence in support of their claims that the defendants engaged in concerted, anti-competitive activity within the meaning of section 1 of the Sherman Antitrust Act. They seem to presume that because the defendants are members of a trade organization, and because some of them expressed their displeasure with plaintiffs' attempts to compete with them in casket sales, they have violated the Sherman Antitrust Act. All of the evidence the plaintiffs offer in support of their claims, however, does not constitute sufficient evidence of a section 1 violation to save the plaintiffs' claims from summary judgment.

#### c. *Plaintiffs' State Law Claims*

Because we are dismissing the plaintiffs' federal claims, the Court will dismiss the plaintiffs' remaining state claims for lack of jurisdiction.

### V. PEGGY BEHM'S SUMMARY JUDGMENT MOTION

In her separate motion for summary judgment, defendant Peggy Behm argues that the plaintiffs have no evidence that she participated in any of the illegal acts alleged in the complaint. Ms. Behm testified at her deposition that she works at the Behm Funeral Home but takes no part in the operation of the business. In addition, she contends she is not a licensed funeral director, and has never attended any meetings of the various funeral director associations of which her husband is a member.

Plaintiffs' original response to Ms. Behm's motion consisted of one footnote in their response to the defendants' motion for summary judgment. In this footnote, the plaintiffs state that Peggy Behm "attended at least one meeting where the Park was discussed with third persons." And that she is "in partnership with Frank Behm as to rentals of funeral equipment to Behm Funeral Home, Behm Leasing & Rental Company, and to that extent she is liable for his actions." Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at 1 n. 2. The plaintiffs also allege in this footnote that Peggy Behm is a partner in Greene County Burial Vault Co. and therefore has personally gained from the "unlawful conspiracy at issue." *Id.*

Perplexed that plaintiffs felt that a footnote was a sufficient response to Peggy Behm's separate summary judgment motion, we ordered them to file a separate response addressing the points raised by Ms. Behm. The plaintiffs filed their response but failed to explain with any great-

er degree of clarity why Peggy Behm should be liable for any of the acts alleged in the complaint. The plaintiffs simply stated that Peggy Behm's partnership and shareholder interests in the Behm entities create a "presumption of involvement in the conspiracies of her husband and Behm Funeral Home, Inc." *Id.* at 5. The plaintiffs have provided no support for their contention that Peggy Behm attended "at least one meeting where the Park was discussed with third persons."

Since neither Behm Leasing & Rental Co., nor Greene County Burial Vault Co. are defendants in this action, and since the plaintiffs have failed to explain why Peggy Behm should be liable for the actions of defendant Behm Funeral Home, Inc. simply because she holds stock in that corporation, we will grant Peggy Behm's summary judgment motion.

All outstanding motions not addressed by this opinion are moot.