**FEDERAL TRADE COMMISSION, Plaintiff,**

**U.S. Roofing Corporation, Intervenor–Appellant,**

v.

**OWENS–CORNING FIBERGLAS CORP., Defendant–Appellee.**

No. 87–3334.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1988.

Decided Aug. 4, 1988.

insufficient evidence to rebut the presumption of a continued access to such information.

Thomas L. Boyer, Charles J. Gerlach, Kemp, Klein, Endelman & Beer, Birmingham, Mich., John J. Siciliano, Fuller & Henry, Ohio, Edward L. Hoffman (argued), Toledo, Ohio, for intervenor-appellant.

James T. Halverson, Shearman & Sterling, New York City, Robert T. Joseph (argued) Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Thomas W. Palmer, Marshall & Melhorn, Toledo, Ohio, for defendant-appellee.

Before: LIVELY, MERRITT, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

This case presents intriguing questions concerning federal court jurisdiction. Intervenor-appellant U.S. Roofing Corporation (USR) appeals the district court decision reversing the Federal Trade Commission's (FTC) finding of fact that USR was qualified to purchase certain roofing divisions of defendant-appellee Owens–Corning Fiberglas Corporation (Owens–Corning). The Federal Trade Commission elected not to appeal the district court decision to this court. We dismiss USR's appeal for lack of appellate jurisdiction.

## I

Owens–Corning, a major manufacturer of roofing products, negotiated a settlement to a proposed FTC challenge in 1980 of its acquisition of the Lloyd Fry Roofing Company (Fry), one of the nation's largest privately owned roofing manufacturers. In April 1977, Owens–Corning acquired four plants from Fry. They were located at Compton, California; Portland, Oregon; San Leandro, California; and Woods Cross, Utah. In settlement of that proposed challenge, Owens–Corning and the FTC agreed on certain criteria for an "eligible purchaser" of these plants in a consent order (first consent order). On April 8, 1981, that order was entered by the FTC as a final order. After two years of attempting to sell the plants, Owens–Corning moved to reopen the consent order on the ground that significant changes had occurred in the roofing industry. In 1984 the FTC denied the request.

Thereafter, FTC brought an action for civil penalties against Owens–Corning in district court pursuant to 15 U.S.C.

§ 45(l).[1] Negotiation between the FTC staff and Owens–Corning resulted in a second consent order. The FTC then filed both a Complaint and this second consent order in the district court. The second consent order became the court's Final Judgment pursuant to 15 U.S.C. § 45(l).

In that order, Owens–Corning and the FTC agreed that the district court would appoint an independent trustee, nominated by the FTC and approved by Owens–Corning, who would have nine months to find a "qualified purchaser" or "qualified acquirer." The FTC would initially determine whether a proposed acquirer met the qualifying criteria in the final judgment,[2] but that determination would be subject to a *de novo* factual review in the district court.[3] Upon the failure of the Trustee to find a "qualified purchaser" within the nine month period, the divestiture obligation of Owens–Corning would terminate.

Unable to find a qualified purchaser within the nine month period, the Trustee sought an extension of thirty days, the maximum permitted by the Final Judgment, to try to sell the Compton and Portland plants. The court granted the extension on June 14, 1985.

On June 28 the Trustee entered into a purchase agreement with USR for the sale of all four plants at a price of $1,200,000. The Trustee failed to consult Owens–Corning in making the deal with USR. Owens–Corning argued that this price represented a mere 22% of the plants' appraised real estate value of approximately $5.5 million. The purchase agreement recited, in apparent recognition that the Trustee had not requested an extension for the San Lean-

dro and Woods Cross plants, that if USR were not permitted to purchase those plants, USR could purchase the remaining two plants for $800,000.

Owens–Corning filed a motion in district court challenging the validity of the "purchase agreement" on several grounds. Owens–Corning argued that the purchase agreement lacked mutuality; that the Trustee acted beyond his authority by agreeing to unauthorized conditions; and that the granting of an extension was an abuse of ·discretion. In response to this motion, the FTC requested the right to review these issues first, which the district court granted.

Owens–Corning also sought a declaration that, under the Final Judgment, its divestiture obligations respecting the San Leandro and Woods Cross plants had expired when the Trustee failed to request an extension of time to sell these two plants. The FTC did not oppose this portion of the motion. USR filed a motion to intervene as of right under Fed.R.Civ.P. 24(a)(2) for the limited purpose of presenting its position on whether the extension of time applied to only two or four of the plants. The district court granted USR's motion for intervention, but ruled that Owens–Corning no longer was obligated to divest the San Leandro and Woods Cross plants. No stay of this order was sought.

At the hearing before the FTC, Owens–Corning submitted affidavits from several experts, demonstrating USR's inability to satisfy the criteria of a proposed acquirer in the Final Judgment. After a four month investigation, the FTC sent the Trustee a

---

1. 15 U.S.C. § 45(l) states that "[a]ny person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States.... In such actions, the United States district courts are empowered to grant mandatory injunctions and *such other and further equitable relief* as they deem appropriate in the enforcement of such final orders of the Commission." (emphasis supplied)

2. A proposed acquirer was to be approved:
   only if divestiture to the proposed acquirer [would] further the remedial purposes of the Federal Trade Commission's Complaint and Final Order in Docket No. C–3061 ... and the proposed acquirer [had] the capacity and intent to operate the plant or plants to be acquired as a facility or facilities for the manufacture of asphalt roofing products.

3. Pursuant to the Final Judgment, the factual record upon which the district court's decision was based was compiled before the FTC.

letter stating that, by a 2–1 vote,[4] the FTC would, under certain conditions, approve USR as a purchaser of the Compton and Portland plants. For example, the two-member majority conditioned its approval of the purchase agreement on USR's offering Owens–Corning a "buy-back" agreement, precluding USR or its shareholders from profiting from a quick liquidation of the plants.

Dissatisfied with the FTC's findings that USR possessed the financial capacity and intent to operate the plants as roofing corporations, Owens–Corning sought the *de novo* review provided in the court's Final Judgment. USR again moved to intervene, this time for permissive intervention as to all issues under Fed.R.Civ.P. 24(b)(2). The district court granted USR's motion for permissive intervention.

On February 3, 1987, interpreting and applying the terms of its own Final Judgment, the court in its *de novo* review reversed the FTC's factual findings, and held that USR did not meet the criteria set forth in the Final Judgment. Specifically, the court found that USR lacked the capacity to operate the plants as manufacturing facilities of asphalt roofing products; that the proposed divestiture would not further the remedial purposes of the FTC's second consent order; that USR lacked the requisite intent to operate the plants as manufacturing asphalt roofing products; and that the contract between the Trustee and USR was illusory and lacked mutuality, thus exceeding the Trustee's authority.

On April 6, 1987, only USR filed a notice of appeal from the district court's judgment. On May 7, 1987, in light of the FTC's decision not to appeal, Owens–Corning filed in this court a Motion to Dismiss Appeal for Lack of Jurisdiction.

This case presents two major issues:

(1) in the context of an agreement to settle an action to enforce an FTC consent decree in district court pursuant to 15 U.S. C. § 45(*l*), which agreement becomes the Final Judgment of the district court, may the district court, in enforcing the terms of that Final Judgment, conduct a *de novo* review of FTC factfinding?

(2) assuming the district court could exercise such *de novo* review, does USR, as an intervenor under Fed.R.Civ.P. 24(b)(2) in 15 U.S.C. § 45(l) litigation, have any independent right to appeal the district court's factual determinations to this court, where the FTC has elected not to appeal from those determinations?

**II**

■■■■ The FTC and Owens–Corning, as parties to the district court's Final Judgment, agreed and stipulated to the procedure for determining whether a proposed acquirer met standards relating to financial capacity and intent to operate the plants as asphalt roofing facilities. The language of the stipulated Final Judgment clearly states that the district court, upon Owens–Corning's petition, is to undertake an "independent *de novo*[5] determination" as to whether USR met the agreed on criteria in the final judgment. FTC's staff attorney stated, in the hearing before the district court, that "[t]his is a *de novo* review, and by that is meant that the Court is not bound by the Commission's findings of fact...."

USR argues, on the other hand, that despite the language providing for district court *de novo* review, the district court was nevertheless required to accord substantial deference to the FTC findings on the financial capacity and intent of USR. *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 726, 68 S.Ct. 793, 815, 92 L.Ed. 1010 (1948). *Firestone Tire & Rubber Company v. Federal Trade Commission*, 481 F.2d 246, 248–49 (6th Cir.1973), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 739 (1974).

---

4. The Commission had only three commissioners at the time.

5. Generally speaking, judicial review of agency determination is limited to examination of the agency record. *De novo* review, however, permits the reviewing court not only to examine the record, but to make its own findings of fact, unconstrained by prior agency factual determinations.

While we are mindful of previous rulings that federal courts generally do not have the discretion to set aside FTC findings of fact unless they are clearly erroneous, those rulings arose in direct challenges to agency action. The instant case involves enforcement of a stipulated final judgment entered by a district court pursuant to its enforcement authority under the Federal Trade Commission Act, 15 U.S.C. § 45(*l*). The Supreme Court has indicated that "there may be independent judicial fact-finding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).[6] The Court has also stated that "... *de novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The implementing regulations for 15 U.S.C. § 45 indicate that "a proposal to settle a matter in adjudication by consent agreement shall be submitted by way of a motion to *withdraw* the matter from adjudication for the purpose of considering the proposed consent agreement." 16 C.F.R. § 3.25 (emphasis supplied). Moreover, in another section of the FTC Act, which deals with civil actions for violations of rules and cease and desist orders respecting unfair or deceptive acts or practices, the Congress expressly provided that the terms of a cease and desist order may indicate that the Commission's findings respecting material facts shall not be conclusive. 15 U.S.C. § 57b(c)(1).

Contrary to USR's characterizations, the instant case is an action initiated in the district court by the FTC, seeking relief from the district court, and requiring the district court to resolve factual questions in the context of a stipulated final judgment entered by it. In the circumstances of this civil penalty remedy hearing pursuant to 15 U.S.C. § 45(*l*), the FTC assumed the position of any other litigant, entitled to be heard, but not deferred to. The final determination as to an appropriate settlement of a civil penalty action pursuant to § 45(*l*) is, in our view, within the power of the court. Agreement between the parties in settling this § 45(*l*) action, rather than an enabling federal statute or provision of the Administrative Procedure Act, gave the FTC the initial factfinding function for assessing whether a proposed purchaser met the criteria in the Final Judgment.

Moreover, neither the language nor the legislative history of the Federal Trade Commission Act indicates that Congress necessarily intended to diminish the fact-finding power of the district court in enforcing final judgments under § 45(*l*). Indeed, while § 45(*l*) is silent regarding the factfinding power of a district court, it indicates the breadth of the authority given by Congress to the district courts in enforcing FTC orders. It states that "the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of ... final orders of the Commission." 15 U.S.C. § 45(*l*). We therefore hold that a district court's *de novo* factual review is permissible for the purpose of enforcing, pursuant to 15 U.S.C. § 45(*l*), its final judgment based on a consent order to which the FTC itself is a party, and where the FTC has agreed to be bound by such *de novo* review.

### III

■ In its motion to intervene as of right under Fed.R.Civ.P. 24(a)(2),[7] USR ar-

---

6. 16 C.F.R. § 3.25(e) provides that if a matter is withdrawn from adjudication before an Administrative Law Judge because the parties have been able to arrive at a consent agreement, "the Commission will treat the matter as being in a nonadjudicative status with respect to those respondents signing the proposed consent agreement."

7. Fed.R.Civ.P. 24(a)(2) provides that "[u]pon timely application anyone shall be permitted to intervene in an action ... when the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to pro-

gued that it had an interest in purchasing the plants, and that neither the Trustee nor the FTC would adequately represent the argument that it should be allowed to purchase all four plants. The district court granted USR's motion to intervene as of right. USR argues that at that point it formally became a party to this action, and has been ever since. USR, in our view, mischaracterizes the nature and extent of its participation in this lawsuit.

The scope of this intervention as of right was clearly circumscribed by the district court to the issue of whether the extension of time extended to all four plants, or only two of the four plants. The district court reasoned that the FTC did not adequately represent USR in this respect since it had agreed not to oppose Owens–Corning's motion to declare that the June 14, 1985 extension applied to only the Compton and Portland plants. By granting USR's limited motion for intervention as of right, the district court did not indicate that USR had an interest in the property independent of the terms of the Final Judgment to which only Owens–Corning and the FTC were parties, or any right of appeal beyond the extension issue.

After consideration of the parties' arguments, the district court ruled that USR would have an opportunity to purchase only two of the four plants. Subsequently, it directed Owens–Corning and the FTC to present their positions before the Commission as provided in the consent order, and permitted USR to present its position as well. After the parties presented their evidence and arguments, the Commission determined that USR possessed the financial capacity and intent to operate the plants as roofing corporations under the criteria in the consent order, and thus could purchase the plants. Pursuant to the Final Judgment, Owens–Corning sought a *de novo* review of the FTC determination that USR met the criteria in the Final Judgment.

Both Owens–Corning and the FTC filed briefs in the district court.

As stated above, USR then filed a second motion for intervention in the district court, this time for permissive intervention under Fed.R.Civ.P. 24(b)(2).[8] USR, in its motion opposing the dismissal of its appeal to this court, argued that "it was unsure it needed additional permission to intervene since its earlier Motion had been granted...." Owens–Corning virtually ignored USR at this stage in the litigation, failing to serve any petitions, motions or briefs on USR. The district court granted USR's motion for permissive intervention.

The fact that a second motion for intervention was filed and granted suggests to us that USR had not become a formal party for all purposes of this litigation merely because it had earlier intervened on a limited issue. While USR argues that its "rights flow not from the Consent Judgment, but from the purchase agreement it entered into with Trustee Louis Klein," we fundamentally disagree. The validity of the purchase agreement in the context of this civil penalties action under § 45($l$) depended on whether USR met the criteria set forth in the Final Judgment. The initial factual determination by the FTC was, in the instant case, only an extension of the district court's power to enforce FTC consent orders or decrees under § 45($l$). In this context, enforcing the terms of a final judgment was a matter in which a private individual such as USR had no independent rights. We express no view as to whether USR could have brought a private contract or tort action, or any other action, against the Trustee individually.

USR argues that it sought to intervene "for the purpose of ensuring and defending its right to purchase the plants, pursuant to USR's agreement with the Trustee." However, USR misses the point—its right to purchase the plants depended on the

tect that interest, unless the applicant's interest is adequately represented by existing parties."

8. Fed.R.Civ.P. 24(b) provides that "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question

of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

logically prior determination of whether it met the criteria negotiated and hammered out in the second consent order between Owens–Corning and FTC. Owens–Corning's obligation to divest those plants thus depended on the application and interpretation of the "qualified purchaser" criteria in the court's Final Judgment.

When the FTC failed to appeal the district court's reversal of its findings of fact on USR's financial capacity and intent to operate the plants as roofing facilities, that was the end of the matter. Even if the FTC elected to appeal those findings to this court, USR could only have tagged along on the coattails of the FTC. By electing not to appeal, the FTC has accepted the district court's decision as the final resolution of the matter in enforcement of the FTC order and the FTC complaint for civil penalty. We also note that the Trustee has elected not to appeal to this court, and thus failed to maintain whatever right he might have had to enforce the proposed "purchase agreement" by appealing the district court's dismissal of the case.

USR seeks to assume the FTC's role, and compel Owens–Corning's divestiture of certain roofing plants for its own private gain. USR, however, was neither a party to the Final Judgment, nor to any consent agreement or order.

In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975), the Supreme Court stated that "a well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." (citations omitted) *See also Dahl, Inc. v. Roy Cooper Co.*, 448 F.2d 17, 20 (9th Cir.1971) ("[o]nly the Government can seek enforcement of its consent decrees."); *United States v. American Society of Composers, Authors and Publishers*, 341 F.2d 1003, 1008 (2d Cir.), *cert. denied*, 382 U.S. 877, 86 S.Ct. 160, 15 L.Ed.2d 32 (1965) ("the government is the sole proper party to seek enforcement of government antitrust decrees.")

Moreover, USR may not, as a private party, invoke the jurisdiction of the federal courts to enforce the Federal Trade Commission Act. Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission itself. *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir.1974) ("[T]he Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions." (citations omitted)) *See also Driesbach v. Murphy*, 658 F.2d 720, 730 (9th Cir.1981); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n. 2 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

In attempting to appeal the district court's reversal of the FTC factual findings, USR in essence seeks to enforce a private divestiture remedy. USR basically seeks to compel Owens–Corning to divest certain plants it purchased from Fry. We have held that Section 16 of the Clayton Act, 15 U.S.C. § 26, "does not create a private divestiture remedy." *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 729 F.2d 1050, 1060 (6th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 510, 83 L.Ed.2d 401 (1984).

Since Owens–Corning has not challenged USR's right to intervene in this lawsuit, USR argues, Owens–Corning ought to be foreclosed from raising the jurisdictional issue of USR's right to appeal. On the contrary, jurisdictional questions may be raised for the first time on appeal, and a court may *sua sponte* raise jurisdictional issues. The question of whether there exists a justiciable controversy in the sense of appealability to this court is an essential jurisdictional issue. Moreover, the jurisdictional question here concerns the right to appeal to this court, which was not before the district court.

In *Golden v. National Finance Adjusters*, 555 F.Supp. 42 (E.D.Mich.1982) the court dismissed a private plaintiff's attempt to enforce a government antitrust decree against the defendant on the basis

that the suit lacked a justiciable controversy. The district court stated that

> [u]nder the circumstances of the facts alleged, there is no substantial controversy touching the legal relations of parties having adverse legal interests. Since plaintiffs cannot enforce the consent decree against the defendant, plaintiffs do not have any legal rights under the consent decree which are adverse to the defendant's rights under it. The issue of what the consent decree means presents a purely abstract question in the absence of any right of plaintiffs to enforce the consent decree. Plaintiffs have failed to show how an interpretation of a consent decree between the government and defendant, which plaintiffs cannot enforce against defendant, presents a justiciable controversy to this Court."

555 F.Supp. at 46–47.

We therefore hold that this court lacks jurisdiction to hear USR's arguments, and accordingly dismiss USR's appeal for lack of jurisdiction.