Alfred T. TACKER, d/b/a Family
Heritage Casket Gallery,
Inc., Plaintiff,

v.

Elmer WILSON, individually, and Wilson Metal Casket Company, Inc.; Batesville Casket Company, Inc.; Delta Casket Company, Inc.; Memphis Casket Company, Inc.; Wilbert Burial Vault Company, Inc.; Doric of Memphis, Inc.; Memorial Park, Inc.; Memorial Guardian Plans, Inc.; Westpoint Casket Company, Inc.; Henry Spikes, individually, and as a Director of the Tennessee Board of Funeral Directors & Embalmers; Leon Ridgeway, individually, and as a Director of the Tennessee Board of Funeral Directors and Embalmers; Thomas Strickland, individually, and as a Director of the Tennessee Board of Funeral Directors and Embalmers; Robert P. Shackelford, Jr., individually, and as a Director of the Tennessee Board of Funeral Directors and Embalmers; Arthur Pickle, individually, and as a Director of the Tennessee Board of Funeral Directors and Embalmers; Service Corporation International; Memorial Park, Inc.; and Memorial Guardian Plans, Inc., d/b/a Memphis Funeral Home, Defendants.

No. 92–2586–4/BRE.

United States District Court,
W.D. Tennessee, W.D.

Aug. 4, 1993.

Robert G. Gilder, Southhaven, MS, for Alfred T. Tacker.

James R. Garts, Jr., Harris, Shelton, Dunlap & Cobb, Memphis, TN, Paul B. Plant, Harwell & Plant, Lawrenceberg, TN, for Elmer Wilson, Individually and Wilson Metal Casket Co., Inc.

Donald E. Knebel, Barnes & Thornburg, Indianapolis, IN, for Batesville Casket Co., Inc., and Doric of Memphis, Inc.

William W. Dunlap, Jr., Harris, Shelton, Dunlap & Cobb, Memphis, TN, for Batesville Casket Co., Inc.

Alan R. Wolfe, Joseph M. Crout, Williams, McDaniel & Wolfe, P.C., Memphis, TN, for Memphis Casket Co., Inc.

Michael Richards, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, TN, for Memphis Wilbert Vault Co., Inc., Memorial Guardian Plans, Inc., Henry Spikes, Leon Ridgeway, Thomas Strickland, Robert P. Shackelford, Jr., and Arthur Pickle.

Frank Carney and Alan E. Glenn, Evans & Petree, Memphis, TN, for Memorial Park, Inc.

B. Storey, Edwards, Storey, Marshall & Helveston, West Point, MS, for Westpoint Casket Co., Inc.

Myron L. Dale, Friest & Jacobs, Cincinnati, OH, for Aurora Casket Co., Inc.

William W. Grubbs, Jr., Memphis, TN, for Delta Casket Co., Inc.

Hulon O. Warlick, Warlick, Myhr, and Brown, Memphis, TN.

Steven E. Winn, Office of the State Atty. Gen., Nashville, TN, for the State.

ORDER GRANTING IN PART AND DE-
NYING IN PART MOTIONS TO DIS-
MISS FILED BY WILSON METAL
CASKET COMPANY, INC.; DORIC
OF MEMPHIS, INC.; BATESVILLE
CASKET COMPANY, INC.; MEM-
PHIS CASKET COMPANY, INC.;
WESTPOINT CASKET COMPANY,
INC.

and

DISMISSING FROM THE ACTION HEN-
RY SPIKES, LEON RIDGEWAY,
THOMAS STRICKLAND, ROBERT P.
SHACKELFORD, JR., and ARTHUR
PICKLE, INDIVIDUALLY AND AS
DIRECTORS OF THE TENNESSEE
BOARD OF FUNERAL DIRECTORS
AND EMBALMERS.

and

DENYING ELMER WILSON'S MOTION
TO DISMISS THE STATE LAW
TORT CLAIM

McRAE, Senior District Judge.

This is a federal antitrust action which plaintiff seeks to supplement with a state antitrust claim and a state tort claim. Now before the Court are several motions to dismiss on various grounds, filed by various defendants.

As to plaintiff's allegations under § 1 of the Sherman Act, this Court (1) **DENIES** the motions to dismiss filed by Wilson Metal Casket Company; Batesville Casket Company; Memphis Casket Company; Doric of Memphis; and Westpoint Casket Company and (2) **GRANTS** the motion to dismiss filed by Henry Spikes, Leon Ridgeway, Thomas Strickland, Robert P. Shackelford, Jr., and Arthur Pickle in those defendants' official capacities as directors of the Tennessee Board of Funeral Directors and Embalmers.

As to plaintiff's allegations under 15 U.S.C. § 45 and FTC regulations promulgated thereunder, this Court **DISMISSES** the action as to all named defendants for failure to state a legally-cognizable claim.

As to plaintiff's allegations under Tennessee antitrust law, this Court **DISMISSES** the action as to all named defendants for failure to state a legally-cognizable claim.

As to plaintiff's common-law intentional tort allegations against defendant Elmer Wilson, this Court **DENIES** Elmer Wilson's motion to dismiss for lack of supplemental jurisdiction.

**DISCUSSION**

**I. THE ANTITRUST CLAIMS**

Plaintiff ("Tacker") owns and operates the Family Heritage Casket Gallery in Memphis, Tennessee. Tacker alleges that in order to continue the practice of fixing artificially high prices for funeral goods and services, the defendants conspired to prevent Tacker from engaging in the business of selling caskets directly to the public at a relatively reduced price. The list of defendants can be broken down into two groups: (1) Casket distributors and (2) Corporations providing funeral services ("service providers"), many of whose officers belong to a governing board of funeral directors and embalmers. That board and its directors are also named defendants.

Tacker alleges that defendants were participants in a sort of oligopoly/cartel that engaged in price-fixing and tie-ins to preserve their market power. When Tacker threatened this practice by independently offering caskets to the public at a relative discount, defendants conspired to refuse to deal with Tacker.

In the second amended complaint, Tacker alleges that the refusals to deal were apparently dictated by the defendant corporate service providers and their officers, some of whom served on the Tennessee Board of Funeral Directors and Embalmers ("the Board"). The second amended complaint states that in 1990 and 1991, when plaintiff applied for his license to sell caskets, the Board arbitrarily delayed plaintiff's receipt of a license. After plaintiff finally received the license, a director of the Board indicated that since the Board had failed to prevent Tacker from getting a license, they would make sure that Tacker's business failed.

A pattern emerged. Tacker and a distributor would communicate as to Tacker's pur-

chasing inventory from the distributor. Initially, the distributor would agree to supply Tacker with caskets, but would ultimately withdraw from the arrangement, ostensibly after having been pressured by other distributors and service providers to become part of the conspiracy.

The second amended complaint asserts that all defendants committed wrongs under § 1 of the Sherman Act, under FTC regulations, and under the Tennessee antitrust statutes. There is an additional allegation of common-law assault and battery against one of the individual defendants, Elmer Wilson.

According to defendants, Tacker's complaint, amended complaint, and second amended complaint must be dismissed because of their failures to indicate specifically how the refusals to deal were anything other than a series of unilateral decisions and for the complaint's failure to state claims for which relief can be granted under FTC regulations and Tennessee anti-trust law. In addition, Elmer Wilson argues that the tort allegations against him should not be subject to this Court's supplemental jurisdiction.

**(1) The Sherman Act Claim (as it affects Wilson Metal Casket Company, Batesville Casket Company, Memphis Casket Company, Doric of Memphis, and Westpoint Casket Company)**

■ § 1 of the Sherman Act states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in the restraint of trade or commerce among the several states ... is declared to be illegal." 15 U.S.C. § 1 (Supp.1993). Defendants advocate dismissal of Tacker's claim under § 1 of the Sherman Act because of faulty pleading. In order to state a claim under § 1, the plaintiff must usually indicate (1) that the defendants contracted, combined, or conspired, (2) that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets, (3) that the objects of and the conduct pursuant to the conspiracy were illegal, and (4) that the plaintiff was injured as a proximate result of that conspiracy. *Greene County Memorial Park v. Behm Funeral Homes, Inc.,* 797 F.Supp. 1276, 1284

(W.D.Pa.1992), *aff'd without op.,* 993 F.2d 876 (1993).

*Eastern States Retail Lumber Dealers' Asso. v. United States,* 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490 (1914) involved a group of lumber dealers engaged in price fixing. As the lumber cartel's prices increased, lumber wholesalers suffered decreased sales and began dealing directly with the public. In response, the retail cartel agreed among themselves not to deal with lumber wholesalers who dealt directly with the public. *Eastern States* was one of the Supreme Court's earlier acknowledgments of a concerted refusal to deal's inherent economic harm. According to the Court, one dealer has the unquestioned right to refuse to deal with another "for reasons sufficient to himself," but:

> An act harmless when done by one may become a public wrong when done by many acting in concert, for it then takes on the form of a conspiracy, and may be prohibited or punished, if the result be hurtful ... to the individual against whom the concerted action is directed.

*Eastern States,* 234 U.S. at 614, 34 S.Ct. at 955.

■ In determining the sufficiency of a claim under § 1 of the Sherman Act, a Court must look to the nature of the alleged behavior to decide between how to analyze the allegations—either under a *per se* analysis or by the rule of reason. A naked restraint of trade with no purpose other than to stifle competition is a violation *per se* of § 1 of the Sherman Act. *Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.,* 854 F.2d 802, 805–806 (6th Cir.1988).

■ For many years, the U.S. Supreme Court consistently held that concerted refusals to deal were violations *per se* of § 1. Business and economic justifications for such conduct were thus deemed irrelevant, and a showing of adverse effect on competition was considered unnecessary. *See also, United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 210–19, 60 S.Ct. 811, 838–42, 84 L.Ed. 1129 (1940); *Fashion Originators' Guild, Inc. v. FTC,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); *Northern P. R. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2

L.Ed.2d 545 (1958); *Klor's, Inc. v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.,* 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961).

Later, however, in *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.,* 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985), the Supreme Court carved out an exception to the long-standing *per se* rule for concerted refusals to deal, deciding that such conspiracies or combinations can potentially increase efficiency in a given market and thus have a purpose other than to be blatant and unreasonable restraints of trade, especially if those acting in concert do not have effective market power. The apparent rule now is that concerted refusals to deal are violations *per se* of § 1 where there is no plausible argument that the refusal to deal accentuates efficiency and where it is impossible to prove that the conspirators possess market power. Otherwise, the concerted refusal to deal resulted in no anti-competitive effect. *Northwest Wholesale,* 472 U.S. at 289–98, 105 S.Ct. at 2616–21.

Defendants in the current action argue that the § 1 claim cannot withstand a Rule 12(b)(6) motion to dismiss for failure to state a legally-cognizable claim, because plaintiff offers nothing more than conclusory allegations to support the claim. In addition, defendants argue that the claim must fail because it does not allege each essential element of a § 1 violation.

Rule 8(a) of the Federal Rule of Civil Procedure states that a complaint is adequate when it contains:

(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ...

(2) a short and plain statement of the claim showing that the pleader is entitled to relief, and

(3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8.

█ A complaint need not be overly fact-specific. The function of the complaint is to give the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; however, pleadings filled with nothing but conclusory allegations that do not afford notice to the court or to the opposing parties violate Rule 8. *Ames v. North American Reinsurance Corp.,* 815 F.2d 75 (6th Cir.1987). Such a violation of Rule calls for dismissal of the complaint under Rule 12(b)(6) for failure to state a legally-cognizable claim. The claim should not be dismissed, however, unless it appears that beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Windsor v. The Tennessean,* 719 F.2d 155 (1983), *reh'g denied,* 726 F.2d 277 (6th Cir.), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

█ Defendants argue that the claim under the Sherman Act is replete with conclusory allegations and should be dismissed for that reason. However, a conspiracy is, by its very nature, cloaked in secrecy. A complaint ought not to be dismissed for plaintiff's failure to state facts that defendants might meticulously have hidden from plaintiff and that only a discovery process might reveal. As the Supreme Court stated in a factually-similar case, "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, [and] the proof is largely in the hands of the alleged conspirators...." *Norfolk Monument Co. v. Woodlawn Memorial Gardens,* 394 U.S. 700, 704, 89 S.Ct. 1391, 1393, 22 L.Ed.2d 658 (1969). Additionally, because Tacker alleges a concerted refusal to deal, he is relieved from pleading with as much specificity as might be necessary under a rule of reason analysis.

█ In the second amended complaint, Tacker alleges numerous incidents in which casket distributors refused to sell caskets to him, either refusing at the outset or ultimately withdrawing from prior agreements. In paragraph 44 of the amended complaint, Tacker alleges that the manager of one of the distributors informed Tacker outright that one of the service providers "would not allow" that distributor to sell to Tacker. Tacker alleges that all of these distributors supplied caskets to the service providers. In

paragraph 47, there is a description of how one salesperson informed plaintiff that he had been told "not to come near" plaintiff's company. Elsewhere in the second amended complaint, Tacker describes incidents of coercion and intimidation among the parties allegedly in concert, threats against plaintiff's livelihood, and habits of price-fixing and tying-in.

This Court agrees with defendants that the complaints contain many pages of surplusage and that the useful allegations in plaintiff's complaints are relatively few. Defendants are also correct that plaintiff's allegations do not employ antitrust terminology or theory that might make for more specific descriptions of the wrongs alleged.

Tacker does allege facts that indicate more than a series of coincidences. Further, he has alleged facts that, if proven, could indicate defendants' market power in concert and their conspiracy's anti-competitive results of artificially increased prices and squeezing out independent competition. The nature of any effective conspiracy is an important reason that the § 1 claim survives these motions to dismiss. Tacker cannot be expected, prediscovery, to allege facts that have allegedly been painstakingly and systematically withheld from him.

Tacker's complaint is not so conclusory as to deprive defendants of notice of the nature and basis of the claim under the Sherman Act. The Court will not dispose of that claim before discovery is had. Wilson Metal Casket Company's, Batesville Casket Company's, Memphis Casket Company's, Doric of Memphis's, and Westpoint Casket Company's Rule 12(b)(6) motions to dismiss plaintiff's claim under 15 U.S.C. § 1 are DENIED.

(2) **THE SHERMAN ACT CLAIM (as it affects Henry Spikes, Leon Ridgeway, Thomas Strickland, Robert P. Shackelford, Jr., and Arthur Pickle ("the Board") in their individual capacities and official capacities as directors of the Tennessee Board of Funeral Directors and Embalmers ("the TBFD & E"))**

Plaintiff alleges in the second amended complaint that the Board, in their individual and official capacities, violated § 1 of the Sherman Act by intentionally delaying plaintiff's licensure to engage in selling caskets retail. In addition, plaintiff alleges that the Board comprises an oligopoly "controlling the entire funeral industry in the Memphis a monopoly (sic), against the interest of the consuming public as well as that of anyone attempting to compete in the area of casket and/or vault sales." Para. 54, Second Amended Complaint.

As a state body, the TBFD & E is immune from antitrust scrutiny for actions that would be unlawful restraints if carried out by private parties. *See Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker*, the Supreme Court decided that the framers of the Sherman Act did not intend for antitrust laws to interfere with the market-regulation activities of the states, such as the creation of regulating bodies like the TBFD & E.

This is not to say that the Board is immune from liability for all actions. The "state action" doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly. To invoke immunity, which the Board does in its motion to dismiss, the conduct complained of must have occurred pursuant to state compulsion.

Plaintiff alleges that the Board intentionally delayed plaintiff's licensure. One Board member, Leon Ridgeway, is alleged to have threatened to put plaintiff out of business. Plaintiff also cites, as further misconduct by the Board, correspondence to plaintiff from the Board threatening to revoke plaintiff's license if plaintiff did not provide embalming services.

The Board argues that all of the alleged conduct either is shielded by state action immunity or is not legally actionable. This Court agrees. Licensure certainly falls squarely within state action, as does the warning that plaintiff's license would be revoked if plaintiff did not follow licensing policy. Any delay in plaintiff's licensure still falls under the Board's immunity, especially

since plaintiff did get the license he sought. Plaintiff alleges no facts in relation to the licensure or in relation to the threat of revocation that, if proven, would divest the Board of its immunity from liability for those acts.

■ As to the alleged threat made by Leon Ridgeway, plaintiff states no legally-cognizable claim. Even assuming the truth of the allegation for purpose of the motion to dismiss, a unilateral threat cannot stand as the sole basis for a claim under the Sherman Act's requirement that plaintiff prove a conspiracy.

■ Plaintiff argues that even if the Board members are immune in their official capacities, they could still be individually liable for the conduct alleged. However, that argument works only if plaintiff has stated facts amounting to a legally-cognizable claim. At a minimum, a legally-cognizable claim gives an opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved. *Ames v. North American Reinsurance Corp.*, 815 F.2d 75 (6th Cir.1987).

Plaintiff argues that each member of the Board is also personally affiliated with various corporate service providers. Because of these affiliations, argues plaintiff, the members of the Board had personal reasons to wield their administrative powers in ways that would coerce other members of the industry into not doing business with plaintiff. Although plaintiff constructs perfectly plausible motives, plaintiff alleges no facts that, if proven, would impose liability individually upon members of the Board. The motion to dismiss filed by the Board in their individual and official capacities is GRANTED.

### (3) THE CLAIM UNDER 15 U.S.C. § 45 and FTC REGULATIONS

■ Plaintiff alleges that defendants' behavior violated 15 U.S.C. § 45 and regulations promulgated pursuant to that statute. Defendants assert that plaintiff fails to state a claim under 15 U.S.C. § 45 because the statute does not provide for private claims. Plaintiff argues that (1) defendants cite nothing but nonbinding authority for their argument, and (2) even if this Court agrees that there currently exists no private right to a claim under the statute, this Court should take the opportunity to make a change in the law.

The Federal Trade Commission Act ("the FTC Act"), 15 U.S.C. §§ 41, *et seq.*, was created for the purpose of creating and lodging administrative functions in a body specially competent to deal with threats and dangers to trade and competition. *See, Hastings Mfg. Co. v. FTC*, 153 F.2d 253 (6th Cir.), *cert. denied*, 328 U.S. 853, 66 S.Ct. 1344, 90 L.Ed. 1626 (1946); *New Jersey Wood Finishing Co. v. Minnesota Mining and Mfg. Co.*, 332 F.2d 346 (3d Cir.1964), *aff'd*, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965). 15 U.S.C. § 45 is the enforcement statute declaring unlawful "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 15 U.S.C. § 45(a)(1). Courts have traditionally held that the basic purpose of the statute is to protect the public, and that remedial power rests exclusively in the FTC.

Plaintiff is correct that defendants cite other Circuits' law[1] to argue that there exists no private right of action under 15 U.S.C. § 45; however, the Sixth Circuit has also addressed the issue. *FTC v. Owens–Corning Fiberglas Corp.*, 853 F.2d 458 (6th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989), involved the rights of an intervenor under the FTC Act. In *Owens–Corning*, the intervenor, whose rights of intervention were sharply circumscribed, sought to appeal certain findings of fact made by the District Court. *Id.* at 463. In addressing that situation, the Sixth Circuit stated:

> [The intervenor] may not, as a private party invoke the jurisdiction of the federal courts to enforce the Federal Trade Commission Act. Congress has clearly limited

---

1. *See, Baum v. Great Western Cities, Inc.*, 703 F.2d 1197 (10th Cir.1983); *Dreisbach v. Murphy*, 658 F.2d 720 (9th Cir.1981); *Fulton v. Hecht*, 580 F.2d 1243, *reh'g denied*, 585 F.2d 520 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974); *Holloway v. Bristol–Myers Corp.*, 485 F.2d 986 (D.C.Cir.1973).

the invocation of jurisdiction under the FTC Act to the Commission itself. *Id.* at 464. The *Owens–Corning* Court then adopted language set forth in *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir.1974):

> The Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions.

499 F.2d at 237.

This Court is persuaded by the *Owens–Corning* language and also by several decisions in other circuits. Defendants' motions to dismiss plaintiff's allegations under § 45 and regulations promulgated thereunder are hereby GRANTED. Those allegations are hereby DISMISSED.

### (4) The Tennessee Antitrust Allegations

■ Plaintiff alleges that defendants conduct, described in earlier portions of this order, violated Tennessee Code Annotated § 47–25–101 which states, in pertinent part:

> [A]ll arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any ... product or article, are declared to be against public policy, unlawful, and void.

TENN.CODE ANN. § 47–25–101 (1988).

§§ 47–25–103—106 outline the remedies available for violation of § 47–25–101. Such remedies include criminal penalties, enforcement of which would be the Attorney General's duty, and charter forfeiture, enforcement of which also rests exclusively with the Attorney General. The only provision which vests standing to enforce in private parties is § 47–25–106, which states:

> Any person who may be injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, of any person operating such trust or combination, the full consideration or sum paid by

him for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

TENN.CODE ANN. § 47–25–106 (1988).[2]

Plaintiff has alleged no facts that would indicate that plaintiff transacted business with any of the defendants. As a private party, plaintiff's remedy for a violation of § 47–25–101 would be found in § 47–25–106, but plaintiff has stated no claim for which such relief could be granted.

Plaintiff's allegations under Tennessee Code Annotated § 47–25–101 are hereby DISMISSED for failure to state a claim for which relief can be granted.

### II. THE INTENTIONAL TORT CLAIM: WHETHER SUPPLEMENTAL JURISDICTION IS PROPER OVER THE CLAIM AGAINST ELMER WILSON

■ In the second amended complaint, plaintiff alleges that plaintiff and his wife, on Elmer Wilson's invitation, went to St. Joseph, Tennessee to visit the Wilson Metal Casket Company. Plaintiff and Wilson agreed that plaintiff would buy some caskets from Wilson, and Wilson left the room momentarily. When Wilson came back, he told plaintiff that he had changed his mind and would not be selling any caskets to plaintiff. When plaintiff pressed Wilson for an explanation, Wilson,

> without provocation and without warning ... struck plaintiff in the right eye and face with his fist knocking plaintiff to the ground. Mr. Wilson then called out for his son by name and said "come get him." At this moment a young man came from a side door and tackled plaintiff knocking him to the ground. The young man and Mr. Wilson then hit plaintiff several times.... Mr. Wilson and the young man then took plaintiff and literally threw him out of the door and onto the gravel parking lot. Mr. Wilson then instructed the young man to "get my gun, I'm going to kill them." Mrs. Tacker, by this time, had gotten the car and pulled the automobile

**2.** "Person", as used in § 47–25–106, refers to both natural and non-natural persons. *Metropolitan Government of Nashville & Davidson County*

*v. Ashland Oil*, 535 F.Supp. 328 (M.D.Tenn. 1982).

up to plaintiff; as he got in the car Mr. Wilson charged the car threatening to bash in the window. Mrs. Tacker accelerated the car and escaped.

Second Amended Complaint, Paragraph 66. Plaintiff seeks to invoke this court's supplemental jurisdiction, conferred by 28 U.S.C. § 1367, over state-law claims arising from the altercation with Wilson.

28 U.S.C. § 1367 states:

(a) Except as otherwise provided ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

......

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

■ The policy underlying supplemental jurisdiction is that conduct which forms the basis of a federal claim may also form the basis of a state claim:

They may be separate claims, or they may merely be different "counts" or "grounds" or "theories" in support of what is essentially a single claim. Each can be sued on in its own court system, of course, but that creates duplication and waste.... [T]he doctrine of pendent permits the plaintiff to bring both claims in the federal court.

28 U.S.C.A. § 1367 (*Practice Commentary,* Supp.1993).

Almost twenty-five years before the enactment of § 1367, the Supreme Court addressed supplemental or "pendent" jurisdiction in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court formulated a two-step analysis to determine whether the exercise of pendent jurisdiction was proper: (1) Did the state claim and the federal claim share a "common nucleus of operative fact"? and, if so, (2) With respect to doctrines of judicial economy, convenience, and fairness, should the power to hear the claim be exercised? 383 U.S. at 725–27, 86 S.Ct. at 1138–39. § 1367's boundaries are at least coextensive with *Gibbs* 's broad conferral of jurisdiction. § 1367 envelops the "common nucleus of operative fact" test in the requirement that the two claims be "so related ... that they form part of the same case or controversy under Article III of the United States Constitution."

■ Exercise of supplemental jurisdiction is appropriate when, as is true in the current case, both claims arise out of the same alleged conspiracy, the District Court has exclusive jurisdiction over the federal claim, and the supplemental claim would not predominate over the federal claim. *See United States v. Tazzioli Constr. Co.,* 796 F.Supp. 1130 (N.D.Ill.1992). It also stands to reason that where a federal court has jurisdiction over plaintiff's Sherman Act claim, it should exercise supplemental jurisdiction over plaintiff's tort claim, when the tort claim is an outgrowth of the alleged conspiracy, and the alleged conspiracy forms the basis of the Sherman Act claim. *See Bazal v. Belford Trucking Co., Inc.,* 442 F.Supp. 1089 (S.D.Fla.1977). Plaintiff alleges in the Second Amended Complaint that Wilson's tortious behavior was carried out "in furtherance of the plan to prevent plaintiff or scare plaintiff from the business of retail casket sales." Taking as true the allegations of the Second Amended Complaint, plaintiff's tort claim against Wilson is an outgrowth of the Sherman Act conspiracy and is thus sufficiently related to the antitrust claim as to form part of the same case or controversy as the Sherman Act claim, over which this Court has exclusive jurisdiction. *General Invest. Co. v. Lake Shore & M.S.R. Co.,* 260 U.S. 261, 286–88, 43 S.Ct. 106, 116–17, 67 L.Ed. 244 (1922).

Defendant Elmer Wilson's motion to dismiss the intentional tort claim is DENIED.

## SUMMARY

(1) The motions of Wilson Metal Casket Company, Batesville Casket Company, Memphis Casket Company, Doric of Memphis, and Westpoint Casket Company to dismiss the Sherman Act claim are DENIED.

(2) Defendants Henry Spikes, Leon Ridgeway, Thomas Strickland, Robert P. Shackelford, Jr., and Arthur Pickle are hereby DISMISSED in their individual and official capacities, and the Clerk of Court is directed to restyle the case to reflect the dismissal of Henry Spikes, Leon Ridgeway, Thomas Strickland, Robert P. Shackelford, Jr., and Arthur Pickle, in those defendants' individual and official capacities.

(3) Defendants' motions to dismiss the claim under the FTC Act and regulations promulgated thereunder are GRANTED and the claim is DISMISSED.

(4) Defendants' motions to dismiss the claim under Tenn.Code Ann. § 47–25–101 is GRANTED and the claim is DISMISSED.

(5) Defendant Elmer Wilson's motion to dismiss the tort claim is DENIED.

IT IS SO ORDERED.