Roger **MACKLIN**, Plaintiff,

v.

Terry **HUFFMAN** and Michigan Department of Corrections, Defendants.

No. 1:96–CV–27.

United States District Court, W.D. Michigan, Southern Division.

Aug. 25, 1997.

Mark T. Light, Mark T. Light Law Offices, Lansing, MI, for Plaintiff.

E. Michael Stafford, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Corrections Div., Jonathan C. Pierce, Lansing, MI, for Defendants.

## OPINION

QUIST, District Judge.

Plaintiff, Roger Macklin ("Macklin"), filed this action under 42 U.S.C. § 1983 in Kent County Circuit Court after he was temporarily suspended from his employment with the State of Michigan, Department of Corrections pending an investigation by his employer into his alleged misconduct. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a). This matter is presently before the Court on Defendants' Motion for Summary Judgment.

### Facts

Macklin was employed by the State of Michigan, Department of Corrections ("MDOC") as a Food Service Prisoner Leader E–9 at Camp Branch, a state prison camp, from June of 1994 through September of 1995. During this time, Macklin also performed duties of a vacant supervisory position, Food Supervisor VI. The Food Supervisor VI duties performed by Macklin were either within his job description, or were voluntarily performed by Macklin at the lower E–9 classification rate. As an E–9 supervisor, Macklin worked with and supervised other civilians and inmates in prison kitchen operations. Macklin's immediate supervisor during this time was Defendant Terry Huff-

man ("Huffman"), the assistant deputy warden for Camp Branch.

MDOC sought to fill the vacant Food Supervisor VI position sometime in August of 1995. Macklin applied for the position but was not selected. The position was filled by Ron Keelan, who obtained the position through the interview process. (Huffman Dep. at pp. 20–21.)

On or about September 12, 1997, a female prisoner at Camp Branch told prison officials that she had observed Macklin through a crack in the door with his pants down to his knees, with a female prisoner in front of him. On September 14, 1995, Macklin reported to work after a two day absence and was notified that his supervisors needed to speak with him. Thereafter, Macklin met with Huffman, who advised Macklin of the allegations against him and informed him of his right to union representation. Macklin agreed to speak with Huffman without a union representative. Later that day, Macklin was given a series of written questions to answer. Macklin answered the questions while a union representative was present.

Due to the fact that Macklin worked closely with his accuser, as well as other prisoners, Huffman recommended suspension for Macklin until completion of the investigation in order to ensure the integrity of the investigation as well as the safety of Macklin and his accuser. (Huffman Dep. at 66.) Macklin was, therefore, suspended from September 14, 1995, until September 29, 1995.

Macklin's supervisors notified the Michigan State Police of the alleged incident on September 19, 1995, pursuant to MDOC policy.[1] The police contacted Macklin, but he refused to speak with them until he spoke to his attorney. The police did not pursue the matter further. MDOC's investigation failed to substantiate the accusations against Macklin, and no specific charges were ever formulated. Macklin was ultimately reinstated with full back pay. Macklin filed this action against Defendants, alleging that, in reality, he was suspended in retaliation for complaints he made in early September that he suffered employment discrimination. Macklin claims that on or about September 10, 1995, he complained to co-workers that he was rejected for the Food Supervisor VI position and that a less-qualified individual was chosen to fill the position. He also claims that, at or around the same time, he complained that a female employee at another facility, who was performing the same job as Macklin, was being paid at a higher rate.[2] Macklin seeks damages and injunctive relief.

### Discussion

Before reaching any of the other issues raised by Defendants in their motion for summary judgment, the Court must address the issue of whether Defendants are immune from suit in this Court under the Eleventh Amendment. Defendants first raised Eleventh Amendment Immunity in their Supplemental Brief In Support Of Motion For Summary Judgment, which was filed on March 12, 1997. The Court ordered Macklin to file a brief in response, which Macklin has done.

■ In his response, Macklin argues that the Court should not consider the arguments raised by Defendants in their supplemental brief because the brief is actually a Fed. R.Civ.P. 12(b)(6) motion which was filed beyond the deadline set by the Court for dispositive motions. The Court disagrees with Macklin and will treat Defendants' new arguments as part of their motion for summary judgment. Moreover, even if Defendants' supplemental brief was untimely, the Court is obligated to resolve an Eleventh Amendment challenge raised by a party, and may raise the issue sua sponte, because Eleventh Amendment immunity is jurisdictional in the same sense as diversity of citizenship or the well-pleaded complaint rule. *See Wilson–Jones v. Caviness*, 99 F.3d 203, 206 (6th Cir.1996) (relying in part on *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121,

---

1. The allegations against Macklin, if proven true, would amount to criminal sexual conduct, a felony under Michigan law.

2. In his Complaint, Macklin only alleges that he complained to co-workers about another, less-qualified individual being selected for the Food Supervisor VI position. (Complaint, ¶¶ 9–11.) Macklin's claim that he made allegations about a wage discrepancy between himself and a female worker at another facility first appeared in Macklin's affidavit attached to his Brief in Opposition To Motion For Summary Disposition (Judgment).

104 S.Ct. 900, 919, 79 · L.Ed.2d 67 (1984), *opinion amended on other grounds,* 107 F.3d 358 (6th Cir.1997)). *See also Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir.1995) (recognizing that courts have discretion to raise Eleventh Amendment immunity); *Federal Trade Comm'n v, Owens–Corning Fiberglas Corp.,* 853 F.2d 458, 464 (6th Cir.1988) (noting that jurisdictional questions may be raised sua sponte).

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Courts have long held that the amendment also prohibits suits by a citizen against his own state. *See Hutsell v. Sayre,* 5 F.3d 996, 999 n. 2 (6th Cir.1993) (citing *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986)).

Under the state sovereign immunity doctrine, in the absence of consent to suit or waiver of immunity, the Eleventh Amendment shields a state from suit in federal court, regardless of the type of relief sought. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993) (citing, among others, *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982)). Further, state sovereign immunity is an immunity from suit itself, not just liability. *Id.* at 146, 113 S.Ct. at 689. *See also Biggs,* 66 F.3d at 60 (characterizing Eleventh Amendment immunity as a "block" rather than a "limit" on the exercise of a federal court's jurisdiction); *Hutsell,* 5 F.3d at 999 n. 1 (noting that the "atypical" jurisdictional bar of the Eleventh Amendment concerns claims, not cases) (citing *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 337 (6th Cir.1990)).

▮ The immunity bar also extends to suits for damages against state officials acting in their official capacity because a suit of this type is essentially a suit against the state itself. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). As the Seventh Circuit has noted, "[i]t is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment." *Vance v. Peters,* 97 F.3d 987, 990 n. 2 (7th Cir.1996) (citing *Billman v. Indiana Dep't of Corrections,* 56 F.3d 785, 788 (7th Cir.1995)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997).

**A.  Count I**

Count I of the Complaint alleges a claim for damages against Huffman. As previously noted, Huffman was the assistant deputy warden and Macklin's immediate supervisor at Camp Branch. Macklin does not allege in his complaint whether he is suing Defendant Huffman in her official capacity or in her individual capacity.

▮ In order to avoid the bar of sovereign immunity to suits for damages against a state official, a plaintiff must set forth clearly in his pleadings that he is suing the official in her individual capacity rather in her capacity as a state official. *Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir.1995) (citing *Wells v. Brown,* 891 F.2d 591, 593–94 (6th Cir.1989)). A plaintiff who seeks damages is required to indicate on the face of the complaint whether he is suing state officials in their individual capacity or in their official capacity as state officials. *Wells,* 891 F.2d at 593. "The rationale behind this requirement is to afford state officials sufficient notice of the fact that they could be held personally liable for the payment of any damage award obtained by the plaintiff." *Pelfrey,* 43 F.3d at 1038 (citing *Wells* ). An ambiguous complaint will be construed as a complaint against an officer in her official capacity. *Id.* (citing *Wells* ).

▮ The Court finds that the claim against Huffman fails to comply with the Sixth Circuit's holding in *Wells,* which requires a plaintiff to state on the face of the complaint in an unambiguous manner the capacity in which a state official is being sued. The complaint states only that Huffman, who was Macklin's supervisor, is being sued for damages. This allegation is insufficient under *Wells* to avoid Eleventh Amend-

ment immunity for Huffman. Therefore, since the Court lacks jurisdiction over Count I, the Court will remand this claim to the Ingham County Circuit Court pursuant to 28 U.S.C. § 1447(c). *See Henry,* 922 F.2d at 337–38 (finding remand is proper method for resolving section 1983 claims barred by Eleventh Amendment).

In his brief in response to Defendants' supplemental brief, Macklin requested the opportunity to amend his complaint to allege that he is suing Huffman individually. The Court denies Macklin's request because his procedural due process claim under *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), is without merit in light of the Supreme Court's recent decision in *Gilbert v. Homar,* —— U.S. ——, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). In *Homar,* the Court held that due process did not require a state university employer to provide a pre-suspension hearing to a university police officer-employee who had been arrested and charged with a felony in a drug raid. The Court examined three factors to determine what process was due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Id.* at ——, 117 S.Ct. at 1812 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). The Court concluded that a pre-suspension hearing was unnecessary because the suspension without pay was only temporary and, therefore, insubstantial. *Id.* at —— – ——, 117 S.Ct. at 1813–14. The Court also noted that the state had a compelling interest in immediately suspending an employee who is charged with a felony and the imposition of felony charges served to insure that the employer's decision to suspend was not baseless or unwarranted. *Id.*

■ The facts in this case are sufficiently analogous to those in *Homar* to support the conclusion that Macklin was not entitled to a pre-suspension hearing. First, Macklin's loss of pay was only temporary and his lost income was relatively insubstantial. Second, the MDOC's interest in preserving the integ-

rity of its investigation as well as the safety of Macklin, his accuser, and others, warranted immediate suspension. Finally, the fact that the allegations against Macklin came from an independent source serve to insure that Huffman's decision to suspend Macklin was not baseless or unwarranted. Therefore, amendment in this instance would be futile.

## B. Count II

Count II alleges a claim for equitable relief. However, the identity of the defendant or defendants is ambiguous. The Court is unable to discern Macklin's intended defendant from the allegations. Macklin mentions a Defendant Roger McGinnis "in his official capacity," in paragraph 26 of his complaint, yet Roger McGinnis is not named anywhere else in the complaint or caption. Macklin mentions "said Defendant" in paragraph 34; "said Defendants" in paragraph 35; and seeks equitable relief against "said Defendant" in his final prayer for relief.

■ Assuming Macklin seeks equitable relief against the Department of Corrections, sovereign immunity, as discussed earlier, bars the claim in its entirety. The claim is also barred in this Court if it is Huffman that Macklin wishes to target for injunctive relief. *See Puerto Rico Aqueduct,* 506 U.S. at 146, 113 S.Ct. at 688 (holding that judgment is not permitted against a state official declaring that the official violated federal law in the past (citing *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985))). Further, unless there is an ongoing violation of Macklin's federal rights by a state officer, the request for prospective relief has no basis. *See Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908) (landmark case holding that an exception to governmental immunity exists against a state to enjoin an ongoing violation of the Constitution).

■ The gravamen of Macklin's complaint involves a discrete, isolated incident, and there is no evidence in the record that such alleged misconduct will occur on a continuing basis. Thus, the claim for equitable relief is barred by Eleventh Amendment immunity. Therefore, this claim will also be

remanded to the Ingham County Circuit Court pursuant to 28 U.S.C. § 1447(c).

### Conclusion

For the foregoing reasons Defendants' Motion For Summary Judgment will be granted and the case will be remanded to Ingham County Circuit Court.

An Order consistent with this Opinion will be entered.